No.   93-371

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995


BRUCE GALBREATH,

      Plaintiff and Appellant,

  v.

GOLDEN SUNLIGHT MINES, INC.,
PLACER DOME U.S., INC., and
COMPENSATION ADJUSTERS,

      Defendants and Respondents.

FILED

FEB 15 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Second Judicial District,
                In and for the County of Silver Bow,
                The Honorable Dale Cox, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

           Erik B. Thueson and John A. Kutzman,
           Thueson and Lamb, Helena, Montana

           Michael Cotter, Cotter & Cotter,
           Great Falls, Montana

      For Respondent:

           Donald C. Robinson, Poore, Roth & Robinson,
           Butte, Montana


                Submitted on Briefs:  January 12, 1995

                          Decided:  February 15, 1995

Filed:

                            Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Bruce Galbreath appeals from a jury verdict and judgment of the Second Judicial District Court, Silver Bow County, finding that: (1) appellant failed to prove that respondent Golden Sunlight Mine, Inc. (GSM), discharged appellant for filing a workers' compensation claim; (2) appellant failed to prove that respondent Compensation Adjusters violated their obligations to appellant during the adjustment of his workers' compensation claim; and (3) appellant failed to prove that he was terminated without good cause.

We reverse and remand to the District Court for further proceedings.

While appellant raises several issues on appeal, the following issue is dispositive of the case:

Did the District Court err in allowing evidence that appellant was discharged for reasons other than the one set forth in the discharge letter?

Respondent Golden Sunlight Mines, Inc., employed appellant Bruce Galbreath as an instrument technician from 1982 until GSM terminated his employment on September 7, 1989. Following the on-the-job death of co-worker, Terry Olind, in 1987, appellant and co-workers, Joe Robertson and Denis Shaw, pressured GSM to address a variety of alleged work place safety violations. GSM terminated the employment of Robertson and Shaw at different times in 1988.

On May 22, 1989, appellant injured his left knee at work after stepping on a ball bearing while climbing down a ladder. Appellant

2

returned to work the next day after Dr. Reiff of Whitehall examined his knee. On May 31, 1989, co-worker Mike Gallagher found appellant lying head down on a stairwell with his legs protruding through the opening between the top two stairs. There were no witnesses to the accident which, according to appellant, occurred after his previously injured left knee buckled, causing him to fall. GSM's Quick Response Team, accompanied by safety supervisor Ron Dovall, took appellant to Dr. Reiff, who discovered a bump on appellant's head, and diagnosed a tender neck and an abnormal curvature of the cervical spine. After appellant became disoriented and his pupils began to dilate, Dr. Reiff referred appellant to St. James Community Hospital where he was examined by Dr. Pius Baggenstos, a neurosurgeon. Dr. Baggenstos diagnosed a lump on appellant's head, an acute cervical sprain, and injury to appellant's left knee. Appellant lost consciousness during the examination.

From the date of the accident on May 31, 1989, appellant received his full salary under GSM's short-term disability policy which provided for full pay up to four months for bona fide medical absences. Under that policy, GSM reserved the right to request verification of medical absences. GSM informed appellant that during short-term disability there was no light-duty work requirement. During appellant's absence from the mine, he worked regular shifts at a restaurant he and his wife had recently purchased. On August 23, 1989, Compensation Adjusters recommended accepting liability for appellant's May 31, 1989, accident.

3

On August 4, 1989, Dr. Humberger performed arthroscopic surgery on appellant's injured left knee to remove debris. On August 28, 1989, appellant reported to work for the first time since May 31, 1989, with a release to return to work from Dr. Reiff. Later that day, GSM's Maintenance Superintendent, Paul Dale, delivered a letter to appellant explaining that before appellant could return to work, he was required to submit unconditional work releases from Dr. Reiff, Dr. Humberger, and the Ridgeview Clinic, along with a verified letter from each of the above explaining appellant's absence from work from May 31, 1989, through August 28, 1989.

In an effort to comply with Dale's request, appellant returned to work on several occasions and presented Dale with a variety of medical documentation. On each of those occasions, Dale rejected appellant's medical documentation and denied appellant's request to return to work. Appellant was discharged on September 8, 1989, for failing to provide specific documentation explaining his absence from work from May 31, 1989, through August 28, 1989.

On May 23, 1990, appellant filed a complaint alleging: (1) that he had been terminated without good cause under Montana's Wrongful Discharge from Employment Act, § 39-2-901, MCA; (2) that his termination violated § 39-71-317, MCA, which prohibits employers from terminating workers for filing workers' compensation claims and requires employers to give job preference to employees returning to work after an industrial accident; (3) that his termination and its relationship to his workers' compensation claim

4

violated Montana's Unfair Trade Practices Act, § 33-18-201, MCA; and (4) that all of the defendants acted fraudulently, oppressively, and maliciously in violation of Montana's Punitive Damages Act, § 27-1-221, MCA.

The jury returned a special verdict finding that appellant was not terminated for filing a workers' compensation claim; that Compensation Adjusters did not violate Montana's Unfair Trade Practices Act; and that appellant was terminated for good cause. The District Court entered judgment for respondents on all of appellant's claims. Thereafter, the District Court denied appellant's motion for a new trial and a judgment n.o.v. Appellant appeals.

Did the District Court err in allowing evidence that appellant was discharged for reasons other than the one set forth in the discharge letter?

We review evidentiary rulings by the district court to determine whether the district court abused its discretion. State v. Parma (1993), 261 Mont. 338, 341, 863 P.2d 378, 380; State v. Crist (1992), 253 Mont. 442, 445, 833 P.2d 1052, 1054. The district court has broad discretion to determine whether evidence is relevant and admissible, and absent a showing of abuse of discretion, the trial court's determination will not be overturned. Parma, 863 P.2d at 380; Crist, 833 P.2d at 1054.

GSM discharged appellant for failure to provide specific documentation explaining his absence from work from May 31, 1989, through August 28, 1989. Paul Dale, appellant's supervisor and

5

author of the discharge letter, testified that appellant was terminated solely for the reason set forth in the discharge letter.

Following Compensation Adjuster's recommendation, GSM accepted liability for appellant's May 31, 1989, accident. Prior to opening arguments, the court expressed concern in chambers over the fact that although GSM had accepted liability for appellant's injuries prior to trial, they intended to show that appellant's May 31, 1989, accident was staged. As a result, the court narrowed the scope of inquiry about the accident to physical facts surrounding the accident. The court ordered that expert testimony or opinion testimony about the accident would be excluded.

Despite its order, the court allowed speculative testimony suggesting that appellant's May 31, 1989, accident was staged. The court also allowed GSM to present evidence suggesting that appellant was discharged for reasons other than the sole reason set forth in the discharge letter. For example, the court allowed testimony that appellant had been boating shortly after the May 31, 1989, accident; that appellant appeared to be working full-time at his restaurant during his absence from work; and that appellant's injury was not severe enough to prevent him from working at GSM.

GSM argues that this speculative evidence was offered to demonstrate why Dale requested medical verification, rather than to suggest additional reasons for appellant's discharge. The issue, however, was not why GSM requested medical verification, but whether appellant's discharge was wrongful, given the medical verification appellant provided to GSM.

6

In Swanson v. St. John's Lutheran Hospital (1979), 182 Mont. 414, 597 P.2d 702, we concluded that in a wrongful discharge action the only reason for discharge the district court could consider was the reason set forth in the discharge letter. Reasons other than the reason stated in the discharge letter were irrelevant and excluded from evidence. Swanson, 597 P.2d at 704. By allowing the above testimony in the present case to go to the jury, the court, in effect, permitted the jury to decide whether the discharge was wrongful based on reasons other than, or in addition to, the sole reason stated in the discharge letter. Any collateral reasons suggested by the evidence, other than the sole reason stated in the discharge letter, were irrelevant, and therefore, inadmissible. Rule 402, M.R.Evid.; Swanson, 597 P.2d at 704.

We hold that the District Court erred in allowing GSM to offer evidence suggesting that appellant was discharged for reasons other than the reason set forth in his discharge letter.

Reversed and remanded for further proceedings on the single issue of whether appellant was discharged for the reason set forth in his discharge letter.

_____
Justice

We concur:


_____
Chief Justice


7

Karla M. Gray

Jim Treweiler

W. William Leaphart

_____
Justices

Justice Fred J. Weber dissents as follows:

The majority opinion concludes that the District Court improperly allowed evidence which suggested that the appellant was discharged for reasons other than those set forth in the discharge letter to him. The foundation for this holding is Swanson v. St. John's Lutheran Hospital (1979), 182 Mont. 414, 597 P.2d 702. It is true that in Swanson this Court concluded that the only reason for discharge which the District Court could consider was the reason set forth in the discharge letter and that reasons other than those stated in the discharge letter were irrelevant. However, I contend that Swanson is not appropriate authority for our case.

The distinction from the present case is that in Swanson the employee had demanded a letter stating the reasons for her discharge and such a letter had been written and delivered to her. Swanson specifically applied § 39-2-801, MCA (1979), which states:

> **Employee to be furnished on demand with reason for discharge.** It is the duty of any person after having discharged any employee from his service, upon demand by such discharged employee, to furnish him in writing a full, succinct, and complete statement of the reason of his discharge and if such person refuses so to do within a reasonable time after such demand, it is unlawful thereafter for such person to furnish any statement of the reason of such discharge to any person or in any way to blacklist or to prevent such discharged person from procuring employment elsewhere . . . (Emphasis supplied.)

In considering the foregoing statute, Swanson stated:

> Under § 41-1311, RCM 1947, now § 39-2-801, MCA, upon such demand, the employer must furnish to the discharged employee a "full, succinct, and complete reason of discharge." The letter of August 23, 1977, was the employer's compliance with that statute. . . . Where, as

9

in Montana, the purpose of the statute is to prevent "blacklisting", it is our duty to interpret former § 41-1311 requiring a "full, succinct, and complete" statement to mean exactly what it says. Therefore, in the case at bar, the only reason which could be considered by the District Court was the reason set forth in the letter of August 23, 1977, . . . (Emphasis supplied.)

Swanson, 182 Mont. at 422, 597 P.2d at 706. In the present case, there was no request or demand on the part of the appellant for a statement of the reasons for his discharge. As a result § 39-2-801, MCA, is not applicable. The only request was made by Golden Sunlight Mines (GSM) when it requested appellant to furnish specific medical documentation explaining his absence from work for a period of several months. When he failed to furnish such additional medical documentation, he was given his letter of termination which in pertinent part stated:

You have been asked to provide specific documentation explaining your absence from work from May 31 to August 28, 1989. We do not have documentation substantiating this absence and we have reason to believe that not all of this period was attributable to illness or injury. Since you have been unable to furnish this documentation in a reasonable period, August 25 to September 7, 1989, and given your statement on September 7 that you will not supply any further information, we cannot allow you to return to work. This being the case, we have no option but to terminate your employment effective September 8, 1989.

I conclude that § 39-2-801, MCA, is not applicable in the present case and as a result Swanson is not authority for the conclusion reached in the majority opinion. The letter given in the present case is not in any way comparable to the letter in Swanson which is required under the code sections pertaining to blacklisting and protection of discharged employees. The majority opinion has provided no appropriate legal support for its determination that

10

the court abused its discretion by permitting testimony of other possible reasons for the discharge.

I therefore dissent from the majority opinion.

_____
Justice

Chief Justice J.A. Turnage joins in the foregoing dissent.

_____
Chief Justice

11

February 15, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Erik B. Thueson, Esq.
Thueson & Lamb
P.O. Box 535
Helena, MT 59624-0535

Michael Cotter, Esq.
Cotter & Cotter
P.O. Box 3425
Great Falls, MT 59403-3425

Donald C. Robinson, Esq.
Poore, Roth & Robinson
1341 Harrison Ave.
Butte, MT 59701

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy