**Gary J. BLEEK, Plaintiff,**

v.

**SUPERVALU, INC., Defendant.**

No. CV–97–105–GF.

United States District Court,
D. Montana,
Great Falls Division.

March 31, 2000.

J. Kim Schulke, Linell, Newhall, Martin & Schulke, PC, Great Falls, MT, for Plaintiff.

John G. Crist, Crist Law Firm, LLC, Billings, MT, for Defendant.

## MEMORANDUM AND ORDER

HATFIELD, Senior District Judge.

Presently before the court are:

1. Supervalu's motion in limine seeking an order precluding Bleek from presenting any evidence (including expert opinions) or argument that Supervalu's termination of Bleek early · in the day on August 23, 1996, caused him to become 100% disabled later during that same day;

2. Bleek's motion seeking to reopen discovery for the limited purpose of allowing Bleek to add an expert witness; and

3. Bleek's motion in limine.

The first two of these motions are related and will, therefore, be addressed together.

### A. *Supervalu's Motion in Limine and Bleek's Motion to Add an Expert Witness.*[1]

Through its motion in limine, Supervalu seeks exclusion of any evidence or argument on the precise issue of whether Supervalu's termination of Bleek caused him to become 100% disabled on August 23, 1996. Supervalu predicates its motion on its position that Bleek cannot prove Supervalu's termination of him caused him to become totally disabled because Bleek has failed to disclose any expert witness competent to testify in support of that claim, and medical causation requires proper expert testimony.

---

1. Previously in these proceedings, Supervalu raised the issue of whether a discharged employee, who is permanently and totally disabled from working as of the date of his discharge, may pursue a claim under the Montana Wrongful Discharge from Employment Act ("WDEA") and the Americans With Disabilities Act ("ADA"). Bleek has argued that because his case is predicated in part upon the premise that Supervalu caused him to become totally disabled, his WDEA and ADA claims are permissible. Specifically, he has argued he was only partially disabled when he was terminated on the morning of August 23, 1996, but the termination aggravated his pre-existing post traumatic stress disorder ("PTSD") and caused him to become totally disabled later in the same day.

Bleek has responded in two ways. First, he has argued that he has identified two non-physician expert witness competent to testify that Supervalu's termination of his employment aggravated his pre-existing PTSD to the point where he became totally disabled. Second, he has moved the court to reopen discovery for the limited purpose of allowing him to add a physician as an expert witness, thus eliminating the need for a ruling on Supervalu's motion in limine.

### 1. *Bleek's motion to reopen discovery to add a physician.*

In seeking to reopen discovery, Bleek necessarily seeks modification of the schedule set in this action. The schedule "shall not be modified except upon a showing of good cause." Fed.R.Civ.Proc.Rule 16(b); *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992). Rule 16(b)'s " 'good cause' standard primarily considers the diligence of the party seeking the amendment.... [T]he focus of the inquiry is upon the moving party's reasons for seeking modification.... If that party was not diligent, the inquiry should end." *Johnson,* 975 F.2d at 609 (citations omitted).

In the case *sub judice,* Bleek seeks modification of the schedule to identify an expert to testify that his termination by Supervalu caused his pre-existing PTSD to become aggravated to the point that he was rendered totally disabled. However, a review of the record reveals Bleek has not been diligent in providing a physician expert witness to testify in this regard within the deadlines established in the court's scheduling order.

Bleek filed his complaint on August 20, 1997. The parties completed discovery in October 1998, after receiving from the court three extensions of time to complete identification of expert witnesses, to submit expert witness disclosure statements and to otherwise complete discovery. Bleek's request at this juncture in the proceedings, nearly 15 months past the deadline, satisfies neither the diligence requirement nor the "good cause" standard contemplated in Rule 16(b). Thus, the schedule in this action shall not be modified.

Even though Bleek's motion deals specifically with modifying the schedule only to reopen discovery for the limited purpose of adding an expert witness, the court does not believe the circumstances warrant modification even for this purpose. In deciding whether to reopen discovery, courts consider the following factors:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*U.S. ex rel. Schumer v. Hughes Aircraft Co.,* 63 F.3d 1512, 1526 (9th Cir.1995), *cert. granted in part,* 519 U.S. 926, 117 S.Ct. 293, 136 L.Ed.2d 212, *judgment vacated on other grounds,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), *citing, Smith v. United States,* 834 F.2d 166, 169 (10th Cir.1987). Whether to reopen discovery rests in the court's sound discretion. *U.S. ex rel. Schumer,* 63 F.3d at 1526.

In this court's opinion, these factors do not weigh in Bleek's favor. It is true the trial of this matter is not "imminent." Trial is scheduled to commence on October 2, 2000, some six months hence. It is also true, however, that Supervalu has opposed Bleek's request, and will undoubtedly be prejudiced if the court grants it. Supervalu would be in a position of having to conduct additional discovery relative to the new expert witness and would incur the attendant expenditure of time and resources in doing so.

Moreover, as noted *supra,* Bleek was not diligent in identifying an appropriate

expert witness within the permitted time. Similarly, it is reasonable that Bleek could and should have foreseen the necessity of identifying an appropriate expert witness to testify regarding the subject issue prior to the deadline. This conclusion is especially apparent in light of the fact that Bleek presumably did anticipate this necessity when he identified two experts whom he intends to have testify in this regard.[2] For all of these reasons, Bleek's motion to reopen discovery and to modify the schedule of this action is denied.

### 2. *Supervalu's motion in limine to exclude any testimony or argument that Supervalu's termination of Bleek caused him to become 100% disabled on August 23, 1996.*

Again, Supervalu seeks exclusion of any evidence or argument on the precise issue of whether Supervalu's termination of Bleek caused him to become 100% disabled on August 23, 1996.

■ Under Montana law, a plaintiff seeking damages for an injury is competent to testify as to his past and present condition. *Cain v. Stevenson,* 218 Mont. 101, 706 P.2d 128, 131 (1985). This testimony alone is not sufficient, however, to establish causation of the injury where the nature of the injury is such that laymen can neither plainly see, nor infer from the injury, its cause or its potential for permanency. *Id.* (noting loss of a limb as an example of an injury that is readily apparent as permanent in nature). Rather, qualified medical testimony from an expert witness is necessary to prove the cause or permanence of such injuries. *Id.*

■ Along these same lines, a plaintiff need not establish the causal connection between an incident and injury with certainty. *Moralli v. Lake County,* 255 Mont. 23, 839 P.2d 1287, 1291 (1992). Rather, the connection may be established with

reasonable certainty or by a preponderance of the evidence. *Id.,citing, Allers v. Willis,* 197 Mont. 499, 643 P.2d 592, 595–96 (1982).

■ Bleek's alleged 100% disability from PTSD is not an injury for which laymen could plainly determine cause or permanency. Thus, qualified medical testimony from an expert witness is required to prove causation. Bleek has identified two witnesses whom he intends to call to testify relative to his contention that his termination by Supervalu caused his PTSD to worsen to the point that he became 100% disabled. These witnesses, Ann Arrington and Tony Rizzo, are licensed counselors. Neither witness, however, is a medical expert qualified to testify that Bleek's termination caused him to become 100% disabled.

Because neither Arrington nor Rizzo are qualified to render such an opinion, and because they are the only witnesses Bleek has identified in this regard, Supervalu's motion in limine to exclude any evidence or argument on the precise issue of whether Supervalu's termination of Bleek caused him to become 100% disabled on August 23, 1996, is appropriately granted.

### B. *Bleek's Motion in Limine.*

Bleek has moved in limine for exclusion of any testimony or other evidence regarding the issues listed below. The court addresses these issues *seriatim.*

### 1. *Any opinion testimony from Doug Speer, one of Supervalu's Human Resource Directors, regarding proper employment practices.*

Bleek seeks to exclude any opinion testimony from Doug Speer, Supervalu's director of human resources involved in Bleek's termination. First, Bleek seeks exclusion of testimony Speer may offer regarding his reasons for neither sharing

---

**2.** The ability of these two witnesses to testify in this regard is, of course, the subject of

Supervalu's motion in limine, addressed *infra.*

nor disclosing information he possessed regarding Bleek's PTSD to Bleek's supervisor or co-workers. The information was apparently contained in a letter Bleek's counselor, Tony Rizzo, submitted in support of a leave of absence request Bleek made in May of 1994 for work-related stress. Second, Bleek generally challenges what he anticipates will be "some opinions regarding what [Speer] considers to be proper employment practices."

Supervalu has responded that Speer will testify that it is Supervalu's policy to keep medical information about employees strictly confidential when Supervalu obtains such information as part of an employee's request for time off for medical reasons. He also will testify that supervisors are made aware of such medical information only when necessary to facilitate a leave of absence or a reasonable accommodation, if necessary. Because Bleek's request was specifically for time off, Speer will testify that he chose to keep the medical information confidential.

■ Plaintiff has neither cited relevant authority nor argued persuasively to convince this court that Supervalu's anticipated use of Speer's testimony in this regard is improper. Therefore, in this court's opinion, this testimony is appropriate under the circumstances of this case and will not be excluded. Regarding Bleek's second basis for excluding Speer's testimony, the court finds Bleek's concern that Speer may offer "some opinions regarding what [Speer] considers to be proper employment practices" too vague and speculative to permit a decision in limine. Therefore, Bleek's motion in limine regarding exclusion of Doug Speer's testimony is denied.

**2.** ***The dollar amount of Veterans benefits or Social Security benefits received by Bleek after the date of his discharge.***

Bleek seeks exclusion of any evidence relative to the dollar amount of Social Security Administration ("SSA") and Veterans' Administration ("VA") disability benefits he has received after his discharge by Supervalu. It is Bleek's position that this evidence is irrelevant in this case because, if Bleek receives damages for his claims brought under Montana's Wrongful Discharge from Employment Act ("WDEA") and/or the Americans With Disabilities Act ("ADA"), those damages should not be reduced by the amount of disability benefits he has received.

This court has already determined that receipt of SSA and VA benefits does not operate to reduce any liability Supervalu may have in Bleek's claim brought under the WDEA. *See* Memorandum and Order filed November 3, 1999. The precise issue before the court, then, is whether evidence of the dollar amount of Bleek's SSA and VA benefits may be presented to the jury so that, in the event Bleek prevails on his ADA claim, the jury may reduce any damages it may award by that amount. In this regard, Supervalu argues that any damages to which Bleek may be entitled under the ADA must be reduced by the amount of disability benefits he has received from SSA and the VA.

At the outset, it should be noted that damages available under the ADA are the same as those available under Title VII. The ADA incorporates Title VII damages as the ADA remedy. 42 U.S.C. § 12117(a). With regard to reduction of an award for back pay, Title VII provides, in pertinent part:

> Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

42 U.S.C. § 2000e–5(g)(1). The question this provision raises is whether the SSA and VA disability benefits Bleek has received are "interim earnings" that would reduce any back pay award Bleek may receive.

■ In this court's opinion, SSA and VA disability benefits are not "interim earnings" as contemplated under the above-cited provision of Title VII. For the follow-

ing reasons, such benefits should not operate to reduce any damages award Bleek may receive under his ADA claim.

First, reduction of such benefits from a damages award would require public programs such as the SSA and VA to pay for a portion of an employer's liability. *See, e.g., Seibel v. Liberty Homes, Inc.,* 305 Or. 362, 752 P.2d 291 (1988) (holding in a breach of employment contract case that plaintiff's damages should not be reduced by the amount of his Social Security disability benefits). Second, a reduction in the amount of damages the employer may have to pay based on what the employee received from these public programs would lead to a windfall for an employer who violated the ADA. *See, e.g., Maxfield v. Sinclair Int'l,* 766 F.2d 788, 795 (3d Cir. 1985), cert. denied, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986).

Third, and similarly, allowing a reduction in a damages award for benefits an employee received from a source funded by someone other than the employer would permit the employer to discriminate against a disabled employee, and thereby reduce its liability for doing so, at the expense of the source funding the employee's disability benefits. This sort of cost/benefit behavior in which an employer would be allowed to engage, *i.e.,* determining whether it would be more beneficial to discriminate against an employee knowing a social program would cover the cost of doing so, cannot be what Congress intended in enacting the ADA/Title VII remedy provisions. *See Seibel,* 752 P.2d at 293–94.

Finally, fairness dictates that an employer who caused a discharge through discrimination, rather than the employee or the social program that sought to assist the employee, ought to carry the responsibility for their wrongful act. *Promisel v. First Am. Artificial Flowers, Inc.,* 943 F.2d 251, 258 (2d Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992).

In contesting the instant motion, Supervalu relies upon *Nichols v. Frank,* 42 F.3d 503 (9th Cir.1994), for the proposition that an employee, who is disabled for all or a part of the period after termination, must reduce damages he receives under Title VII by the amount of disability benefits he received during the applicable period. In making this argument, Supervalu notes language in *Nichols* in which the Ninth Circuit states that "double recovery" of back pay damages is not available under Title VII. In this court's opinion, however, Supervalu has overstated the scope of the court's holding in *Nichols.*

In *Nichols,* a female employee of the U.S. Postal Service was sexually harassed by her supervisor and was constructively discharged because of these unwelcome advances. As a result of the harassment, she suffered PTSD, for which she was given workers' compensation benefits under the Federal Employees Compensation Act ("FECA"). After trial, she was awarded 100% back pay minus the amount she received in federal employees' workers' compensation benefits. The Ninth Circuit rejected defendants' argument that the FECA provided plaintiff her exclusive remedy, but held that her damages award under Title VII must be reduced by the amount of her disability benefits under the FECA so that she would not receive a double recovery. *Nichols,* 42 F.3d at 515–16.

The facts of the instant case are distinguishable. In *Nichols,* the plaintiff, a federal employee, received disability benefits from the FECA, the federal employees' workers' compensation program. Here, on the other hand, Bleek's disability benefits have come from the SSA and the VA, entities independent of Supervalu, and to which Supervalu does not contribute funds, other than those any other taxpayer would.

This distinction in critical. In *Nichols,* had the plaintiff been entitled to receive both federal disability benefits and a back pay award from the federal entity that constructively discharged her, she would have received a double recovery and her employer essentially would have had to pay her twice. In this case, reduction of

any ADA award Bleek may receive by the amount of disability benefits he has received from a source other than his former employer would provide Supervalu with a windfall. As noted *supra*, this cannot be the result Congress intended.

For these reasons, this portion of Bleek's motion in limine is granted.

3. *The following opinions of Dr. Joseph D. Rich:*

a. **Bleek did not adequately educate his employer about his PTSD, nor did he request an accommodation from them. He requested a leave of absence in 1994, however he did not educate them about the severity of his chronic PTSD, and how it was interfering with his ability to function in his employment with Supervalu.**

b. **If Bleek had requested an accommodation from his employer, there is nothing which Supervalu could have done which would have allowed him to remain in his usual managerial role, and be successful there. Accommodation would have necessitated finding a position for him with considerably less responsibility and fewer expectations, and therefore less stress. It is doubtful that such a position existed, nor that he would have felt it to be acceptable.**

The admissibility or exclusion of the above opinions of Dr. Rich would be more appropriately addressed during trial of this matter. Therefore, Bleek's motion in limine, as it relates to the above opinions of Dr. Rich, is hereby taken under advisement until the time of trial.

4. *Reasons for the termination of Bleek's employment from Albertsons in 1985 and the fact that he sought legal counsel or considered a lawsuit against Albertsons in connection with that termination.*

In responding to this portion of Bleek's motion in limine, Supervalu has represent-

ed to the court that it does not intend to introduce any evidence relative to whether Bleek sought legal counsel, or whether Bleek considered a lawsuit against Albertson's, following his termination from Albertson's employ in 1985. Supervalu argues, however, that the reasons for Bleek's termination by Albertson's bear directly on his disability.

■ Albertson's termination of Bleek occurred 11 years prior to Supervalu's discharge of Bleek. Because of the significant duration of time between these two occurrences, it is the opinion of this court that the reasons for the discharge from Albertson's have no relevance to the facts of the instant case and are, therefore, not admissible. Fed.R.Evid. 402. Moreover, even if this evidence were admissible, its admission could only serve to confuse the issues and/or to mislead the jury. Fed. R.Evid. 403. For these reasons, this portion of Bleek's motion in limine is granted.

5. *Reasons for the discharge of Bleek other than those listed on Hoseck deposition Exhibit 13.*

Joe Hoseck was Bleek's supervisor at Supervalu. Exhibit 13 to Hoseck's deposition contains two pages of Hoseck's handwritten notes listing concerns Hoseck had with Bleek's performance. Hoseck prepared the notes prior to a meeting at which he apparently discussed these concerns with Bleek. Two days after the meeting, Bleek's employment with Supervalu was terminated. Bleek now seeks exclusion of any evidence Supervalu may offer as reasons for Bleek's discharge, other than those reasons stated in Hoseck's notes.

■ Under Montana law, employers in wrongful discharge cases are precluded from offering evidence at trial that suggests that an employee was fired for reasons other than the reasons set forth in a

discharge letter. *Galbreath v. Golden Sunlight Mines, Inc.*, 270 Mont. 19, 890 P.2d 382, 385 (1995); *Swanson v. St. John's Lutheran Hosp.*, 182 Mont. 414, 597 P.2d 702, 706–07 (1979).

Bleek has contended that the concerns listed in Exhibit 13 were the reasons communicated to Bleek for why he was being discharged. As such, they constitute the only reasons upon which Supervalu can rely in arguing that its termination of Bleek was not wrongful.

Supervalu, on the other hand, has argued that the handwritten notes were never physically given to Bleek as a statement of the reasons for his discharge, and that the notes were not obtained by Bleek until discovery during the instant action. Moreover, Supervalu contends, Bleek never requested and Supervalu never provided a written statement of discharge, rendering the holdings in *Galbreath* and *Swanson* inapplicable.

 Bleek has argued in his supporting brief, and Supervalu apparently does not dispute, that Hoseck communicated to Bleek that his concerns listed in the notes were the reasons Bleek was discharged. In this court's opinion, the contents of Hoseck's notes are, therefore, the functional equivalent of a discharge letter. It is irrelevant that Bleek did not physically receive the actual notes at the time of his discharge. Hoseck orally communicated to Bleek the notes' contents as the reasons for his discharge. This makes the holdings in *Galbreath* and *Swanson* applicable and Supervalu is, therefore, precluded from offering evidence that suggests Bleek was fired for reasons other than those set forth in Exhibit 13 to Hoseck's deposition. Thus, this portion of Bleek's motion in limine is granted.[3]

6. *Evidence that all or a portion of any jury verdict or award of damages collected by Bleek in this action may not be subject to income taxes.*

Bleek has withdrawn this portion of his motion in limine. This portion of his motion is, therefore, denied as moot.

## CONCLUSION

Based on the foregoing,

IT IS ORDERED THAT:

1. Supervalu's motion in limine seeking an order precluding Bleek from presenting any evidence (including expert opinions) or argument that Supervalu's termination of Bleek early in the day on August 23, 1996, caused him to become 100% disabled later during that same day is GRANTED;

2. Bleek's motion seeking to reopen discovery for the limited purpose of allowing Bleek to add an expert witness is DENIED; and

3. Bleek's motion in limine is GRANTED in part, DENIED in part and TAKEN UNDER ADVISEMENT in part, as set forth herein.

IT IS SO ORDERED.

---

3. Supervalu's contention that the holdings in *Galbreath* and *Swanson* are inapplicable because Bleek never requested, and Supervalu never provided, a written statement of discharge is not persuasive. In his dissent in *Galbreath*, Justice Weber made the same argument, with which, of course, the majority of the Montana Supreme Court did not agree. *Galbreath*, 890 P.2d at 386 (Weber, J., dissenting).