FILED

05/23/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 22-0023

OP 22-0023

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 92

CHARLES DANIEL SMITH,

    Plaintiff and Appellant,

    v.

CHARTER COMMUNICATIONS, INC.,

    Defendant and Appellee.

| | |
|---|---|
| ORIGINAL PROCEEDING: | Certified Question, United States Court of Appeals for the Ninth Circuit, Cause No. 21-35149<br>Honorable Susan P. Graber and Daniel P. Collins, Circuit Judges, Honorable Jennifer Choe-Groves, Judge for the United States Court of International Trade |
| COUNSEL OF RECORD: | |

    For Appellant:

        Eric E. Holm (argued), Holm Law Firm, PLLC, Billings, Montana

    For Appellee:

        Joshua B. Kirkpatrick (argued), Michelle L. Gomez, David C. Gartenberg, Littler Mendelson, PC, Denver, Colorado

    For Amicus Montana Trial Lawyers Association:

        Justin P. Stalpes (argued), Beck Amsden & Stalpes, PLLC, Bozeman, Montana

             Argued: September 23, 2022
          Submitted: October 11, 2022
            Decided: May 23, 2023

Filed:

_____
               Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 The United States Court of Appeals for the Ninth Circuit has submitted the following state law question to the Court:

> *Whether, in an action for wrongful discharge pursuant to Montana Code Annotated section 39-2-904, an employer may defend a termination solely for the reasons given in a discharge letter, as the court held in* Galbreath v. Golden Sunlight Mines, Inc.*, 890 P.2d 382 (Mont. 1995), or whether the 1999 statutory amendments have superseded the* Galbreath *rule.*

¶2 We accepted certification by order dated January 25, 2022. For the reasons discussed below, our answer is: No—the holding in *Galbreath v. Golden Sunlight Mines*, 270 Mont. 19, 890 P.2d 382, has not been superseded by the 1999 statutory amendments because our holding in *Galbreath* was not predicated upon the subsequently amended statutes. Although *Galbreath* referenced *Swanson v. St. John's Lutheran Hosp.*, 182 Mont. 414, 597 P.2d 702 (1979), which relied on § 39-2-801, MCA, in its holding, the *Galbreath* holding is predicated on the Montana Rules of Evidence. Specifically, we held in *Galbreath* that "[a]ny collateral reasons suggested by the evidence, other than the sole reason stated in the discharge letter, were irrelevant, and therefore, inadmissible. Rule 402, M.R.Evid." *Galbreath*, 270 Mont. at 19, 890 P.2d at 385. In more recent cases, we have clarified the *Galbreath* Rule to note that, while "generally in wrongful discharge cases, reasons for discharge other than those set forth in a discharge letter are irrelevant, and thus inadmissible . . . evidence offered to substantiate the reasons already given in the termination letter is admissible." *McConkey v. Flathead Elec. Coop.*, 2005 MT 334, ¶ 29, 330 Mont. 48, 125 P.3d 1121 (internal quotations and citations omitted).

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 In accordance with M. R. App. P. 15(6)(a)(ii), the Ninth Circuit provided the relevant factual and procedural background to the certified question in its certification order, which we restate here.

¶4 In 2013, Charles Smith began working for Charter Communications, Inc. (Charter). In 2016, he became the Vice President of the Mountain States management area, which required traveling and managing employees at about 50 sites throughout Montana, Wyoming, and parts of Colorado. Although the parties dispute the full extent of the job's travel requirement, it is undisputed that it required at least quarterly travel to these sites. On January 29, 2018, Charter fired Smith and issued a corrective action report which listed two reasons for his termination, only one of which is relevant here: "In December 2017, [Smith] failed to fulfill the 50% travel requirement to [his] management area." Smith filed a wrongful discharge action in state court, which Charter removed to federal court, alleging Charter fired him without good cause in violation of Montana's Wrongful Discharge from Employment Act (WDEA), § 39-2-904(1)(b), MCA.

¶5 The District Court granted Charter's motion for summary judgment. It found there was a genuine issue of material fact as to whether a 50% travel requirement existed in 2017, but this dispute was "immaterial" because the undisputed evidence established that [Smith] "had failed to meet even [the] quarterly travel requirement." The District Court concluded that the failure to comply with the quarterly requirement "substantiated" the letter's 50% travel requirement, and therefore the quarterly travel requirement could be considered. Smith appealed to the Ninth Circuit, arguing that the *Galbreath* Rule prohibited the District

3

Court from considering termination reasons which were not specifically referenced in the discharge letter. In response, Charter argued that the *Galbreath* Rule had been superseded because the Rule relied on § 39-2-801, MCA, which was amended in 1999 to allow employers to use reasons other than the reason provided in the discharge letter to defend against a wrongful discharge action.

¶6    The Ninth Circuit was unable to determine whether to apply the *Galbreath* Rule or whether the *Galbreath* Rule was superseded by the 1999 statutory amendments. It concluded, "In sum, if the sole question is whether [Charter] has 'good cause,' then the district court properly granted summary judgment to Charter. But if the *Galbreath* [R]ule remains good law, then genuine issues of material fact remain, and accordingly, the district court erred by granting summary judgment to [Charter]." The Ninth Circuit certified a version of that question to this Court.

**STANDARDS OF REVIEW**

¶7    "M. R. App. P. 15(3) permits this Court to answer a question of law certified to it by another qualifying court. Our review of the certified question is purely an interpretation of the law as applied to the agreed upon facts underlying the action." *Murray v. BEJ Minerals, LLC.*, 2020 MT 131, ¶ 11, 400 Mont. 135, 464 P.3d 80 (internal quotations and citations omitted). The scope of our review is limited to the certified question. *See Frontline Processing Corp. v. Am. Econ. Ins. Co.*, 2006 MT 344, ¶ 31, 335 Mont. 192, 149 P.3d 906.

4

# DISCUSSION

*Whether, in an action for wrongful discharge pursuant to Montana Code Annotated section 39-2-904, an employer may defend a termination solely for the reasons given in a discharge letter, as the court held in* Galbreath v. Golden Sunlight Mines, Inc*., 890 P.2d 382 (Mont. 1995), or whether the 1999 statutory amendments have superseded the* Galbreath *rule.*

¶8      The WDEA provides that a discharge is wrongful if it was not for good cause. Section 39-2-904(1)(b), MCA.  "Good cause" means any reasonable job-related grounds for an employee's dismissal based on certain factors, including the employee's failure to satisfactorily perform job duties, the employee's material or repeated violation of an employer's written policies, or other legitimate business reasons.  Section 39-2-903(5), MCA.  In a wrongful discharge action, the *Galbreath* Rule prohibits courts from admitting or considering evidence that is collateral or irrelevant to the reason for the employee's termination the employer provided in a termination or discharge letter.  *Galbreath v. Golden Sunlight Mines*, 270 Mont. 19, 890 P.2d 382 (1995).

¶9      Charter argues that the *Galbreath* Rule has been superseded because it relied on *Swanson,* which relied on § 39-2-801, MCA.  Section 39-2-801, MCA, was amended in 1999.  Charter argues that the amendment to § 39-2-801, MCA, has abrogated *Swanson* and, in turn, the *Galbreath* Rule.

¶10      This Court decided *Swanson* in 1979.  *Swanson* was predicated on § 39-2-801, MCA, Montana's version of a commonly enacted "service letter statute."  *Swanson*, 182 Mont. at 422, 597 P.2d at 706.  In *Swanson*, St. John's Lutheran Hospital terminated Marjorie Swanson, who then requested a written reason for her termination.  *Swanson*, 182 Mont. at 419, 597 P.2d at 705.  Swanson's termination letter stated that she was terminated

5

for her "untimely refusal to perform customary and needed services." *Swanson*, 182 Mont. at 419, 597 P.2d at 705. Swanson filed a wrongful discharge action and the district court found, based on numerous pieces of evidence not included or referenced in her discharge letter, that Swanson was an employee of questionable value, and Swanson appealed this finding. *Swanson*, 182 Mont. at 420-22, 597 P.2d at 706.

¶11 This Court explained that when an employee requests a termination letter from her employer, this letter is colloquially referred to as a "service letter." *Swanson*, 182 Mont. at 422, 597 P.2d at 706-07. Typically, service letter statutes require the employer to provide a full, succinct, and complete reason for the employee's discharge in the letter. *Swanson*, 182 Mont. at 422, 597 P.2d at 706. This letter becomes part of the employer-employee contract and, before 1999, precluded a court from admitting or considering evidence of other termination reasons beyond what was provided in the letter. *Swanson*, 182 Mont. at 422, 597 P.2d at 706-07. In 1999, the Montana Legislature amended § 39-2-801, MCA, to allow an employer to introduce other reasons for an employee's termination besides the reason in the service letter. Section 39-2-801(3), MCA.

¶12 While *Swanson*'s holding was predicated on § 39-2-801, MCA, the *Galbreath* holding was predicated on the Montana Rules of Evidence. *Galbreath*, 270 Mont. at 19, 890 P.2d at 385. Shortly after returning to work from an injury, Bruce Galbreath, a Golden Sunlight Mines (GSM) employee, alleged GSM fired him without good cause in violation of the WDEA. *Galbreath*, 270 Mont. at 19, 890 P.2d at 384. In Galbreath's termination letter, GSM stated that he was discharged for "failure to provide specific documentation explaining his absence from work." *Galbreath*, 270 Mont. at 19, 890 P.2d at 384. During

6

trial, the district court admitted evidence suggesting that Galbreath was discharged for reasons other than the reason GSM provided in his termination letter, including that Galbreath had been working full-time at his restaurant during his absence from work and that his injury was not severe enough to prevent him from working at GSM. *Galbreath* 270 Mont. at 19, 890 P.2d at 385. Galbreath argued that the district court erroneously admitted this evidence. This Court agreed, holding that the evidence was irrelevant and inadmissible because it did not support the reasons stated in his discharge letter. *Galbreath*, 270 Mont. at 19, 890 P.2d at 385 (citing M. R. Evid. 402).

¶13   The reasoning underlying the *Galbreath* Rule is the application of the Montana Rules of Evidence. Rule 402 states that "all relevant evidence is admissible, except as otherwise provided by constitution, statute, these rules, or other rules applicable in the courts of this state. Evidence which is not relevant is not admissible." Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M. R. Evid. 401. In wrongful discharge cases, this Court has determined that the proffered reason an employer provides in a termination letter is the "fact of consequence" as to whether the employee was wrongfully discharged. *Galbreath*, 270 Mont. at 19, 890 P.2d at 385; M. R. Evid. 402. Evidence which does not tend to make the existence of this proffered reason more or less probable is collateral or irrelevant. *Galbreath*, 270 Mont. at 19, 890 P.2d at 385; M. R. Evid. 402.

¶14   GSM terminated Galbreath for not providing the proper documentation explaining his absence. *Galbreath*, 270 Mont. at 19, 890 P.2d at 384. Other evidence, such as whether

7

he was working at his restaurant during his absence, did not tend to make the fact of consequence—that he did not provide proper documentation—more or less probable. *Galbreath*, 270 Mont. at 19, 890 P.2d at 385. Relying upon Rule 402, this Court held that "[a]ny collateral reasons suggested by the evidence, other than the sole reason stated in the discharge letter, were irrelevant, and therefore, inadmissible." *Galbreath*, 270 Mont. at 19, 890 P.2d at 385.

¶15 Subsequent case law addressing the application of the *Galbreath* Rule similarly reflects analyses grounded in Rules 401 and 402. In *Jarvenpaa v. Glacier Elec. Coop.*, 1998 MT 306, 292 Mont. 118, 970 P.2d 84, this Court relied on these evidentiary rules to conclude that the *Galbreath* Rule did not preclude the introduction of evidence the district court admitted because it was relevant to the discharge reason provided in the termination letter. *Jarvenpaa*, 1998 MT 306, 292 Mont. 118, 970 P.2d 84.

¶16 In *Jarvenpaa*, Glacier Electric Cooperative ("Glacier") terminated Donald Jarvenpaa and provided a termination letter which indicated that Jarvenpaa "detrimentally affected the morale and the operations of the workplace, and that he had problems exercising his duties as a supervisor." *Jarvenpaa*, ¶¶ 7, 40. Jarvenpaa filed a wrongful discharge action. *Jarvenpaa*, ¶ 8. During trial, the district court admitted testimony that employee moral improved after Jarvenpaa left and the managers who filled Jarvenpaa's position handled the workload better than Jarvenpaa. *Jarvenpaa*, ¶ 38. Jarvenpaa appealed, contending that the district court erroneously admitted this evidence. *Jarvenpaa*, ¶¶ 10-11. The Court held that the *Galbreath* Rule did not apply as "Glacier did not offer evidence to present collateral reasons for Jarvenpaa's discharge." *Jarvenpaa*, ¶ 41. Rather,

8

the Court agreed with the district court's determination that pursuant to Rule 402, the "proffered evidence was relevant and admissible because it tended to prove the truth of the allegations Glacier made in its letter and whether Jarvenpaa was terminated for good cause." *Jarvenpaa*, ¶ 40.

¶17 In *Bean v. Mont. Bd. of Labor Appeals*, 1998 MT 222, 290 Mont. 496, 965 P.2d 256 and *McGillen v. Plum Creek Timber Co.*, 1998 MT 193, 290 Mont. 264, 964 P.2d 18, this Court's determination as to whether or not the *Galbreath* Rule applied to evidence offered by the employer in WDEA cases reflected similar analyses of Rules 401 and 402. *Bean*, ¶ 18 (holding that the *Galbreath* Rule applied because "evidence of incidents of misconduct allegedly committed by Bean other than that described in the March 18, 1993 Incident Report was irrelevant, and therefore, improperly admitted into evidence"); *McGillen*, ¶ 45 (holding that the *Galbreath* Rule did not apply because "Any testimony offered with respect to McGillen being disciplined for sleeping on the job was relevant and, therefore admissible, to tell the jury a possible motive for McGillen placing the ad in the first place").

¶18 In the most recent case to address this issue, we reiterated that the *Galbreath* Rule did not apply to evidence offered by the employer in a WDEA case because, pursuant to Rules 401 and 402, the evidence was relevant to determine whether the existence of the discharge reason in the termination letter was more or less probable. *McConkey v. Flathead Elec. Coop.*, 2005 MT 334, 330 Mont. 48, 125 P.3d 1121. We stated: "[G]enerally . . . reasons for discharge other than those set forth in a discharge letter are irrelevant, and thus inadmissible. We later distinguished *Galbreath* in *Jarvenpaa* holding

9

that unlike collateral issues, such as those offered in *Galbreath*, evidence offered to 'substantiate the reasons [] already given in [the termination] letter' are admissible." *McConkey*, ¶ 29 (internal citations omitted) (citing *Jarvenpaa*, ¶ 41).

¶19 Unlike this Court's holding in *Swanson*, the *Galbreath* Rule is not predicated on § 39-2-801, MCA. The *Galbreath* Rule, as consistently applied by this Court, reflects analyses and applications of the Montana Rules of Evidence. The Rule excludes irrelevant evidence that does not tend to make the existence of the discharge reason in the termination letter more or less probable; conversely, the Rule does not exclude evidence that is relevant to support the stated reason for discharge in the termination letter. *Galbreath*, 270 Mont. at 19, 890 P.2d at 385. The 1999 statutory amendments have not superseded the *Galbreath* Rule.

¶20 Charter argues that if the *Galbreath* Rule remains good law then employers who voluntarily provide a termination letter would be limited in the evidence they may present as compared to employers who decline to give a letter at the time of termination or await an employee demand under § 39-2-801, MCA. But all employers are bound by the Montana Rules of Evidence, irrespective of whether or not a discharge letter is provided. The *Galbreath* Rule requires courts to exclude *collateral or irrelevant evidence*,[1] *Galbreath*, 270 Mont. at 19, 890 P.2d at 385 (emphasis added), but it does not restrict

---

[1] The Ninth Circuit stated that "an employer may not introduce evidence unrelated to the reasons given in a discharge letter." Whether or not there is a distinction between "unrelated" evidence and "collateral or irrelevant" evidence, we point out for the sake of clarity that we have not previously used the term "unrelated" in our application of the *Galbreath* Rule.

courts from considering evidence that supports or substantiates the reason in the discharge letter by making its existence more probable than not, *see* M. R. Evid. 401 and 402.

¶21 Our case law reflects the wide range of evidence courts have admitted because it makes the existence of the reason provided in the discharge letter more or less probable. We have not applied the *Galbreath* Rule so strictly as to unfairly exclude evidence an employer offers which may substantiate the termination reason in the discharge letter. *McGillen*, ¶ 45; *McConkey*, ¶ 30.

¶22 In *McGillen*, Plum Creek Timber ("Plum Creek") terminated Jerry McGillen because he placed an ad in a newspaper falsely stating that his supervisor's truck was for sale. *McGillen*, ¶¶ 7-10. According to McGillen's termination letter, Plum Creek terminated him because the false ad was harassment and against company policy. *McGillen*, ¶ 11. McGillen filed a WDEA action, and Plum Creek sought to introduce evidence that McGillen's supervisor—the target of the fictitious ad—had disciplined McGillen for sleeping on the job prior to the placement of the ad. *McGillen*, ¶¶ 12, 41. McGillen moved to exclude references to any other reasons for his discharge which were not contained in the termination letter, including any testimony involving his discipline for sleeping on the job. *McGillen*, ¶ 41. Plum Creek responded that evidence of the sleeping incident was necessary for the jury to put the stated reason for the discharge in context. *McGillen*, ¶ 41. Relying on *Galbreath*, the district court held:

> The stated reason for the discharge was harassment in violation of the law and company policy. Clearly, under *Galbreath v. Golden Sunlight Mines*, 270 Mont. 19, 890 P.2d 382 (1995), [Plum Creek] cannot offer evidence suggesting that [McGillen] was discharged for other reasons. However, reference to the incident in which [McGillen] was apparently disciplined for

11

> sleeping on the job, which apparently immediately preceded the placing of the ad for which he was discharged, is necessary for the jury to assess the stated reason for the discharge.

*McGillen*, ¶ 41. We affirmed the district court's ruling, holding that the district court "properly limited testimony regarding the reasons for McGillen's discharge to those stated in the discharge letter. Any testimony offered with respect to McGillen being disciplined for sleeping on the job was relevant and, therefore, admissible, to tell the jury a possible motive for McGillen placing the ad in the first place." *McGillen*, ¶ 45.

¶23 Likewise, in *McConkey* we upheld the district court's consideration of evidence which supported the specific proffered reason in the termination letter. *McConkey*, ¶ 30. In *McConkey*, Flathead Electric Cooperative (FEC) terminated Warren McConkey because it determined McConkey's recommendations for negotiating new power supply contracts caused substantial rate increases to the company's members, thereby negatively impacting FEC's finances. *McConkey*, ¶¶ 10, 30. McConkey filed a WDEA claim, and in addition to evidence reflecting substantial rate increases, the district court considered evidence of FEC's negative financial situation including the company's debt to equity ratio, the increased power supply costs, and the necessity to retain bankruptcy counsel to conclude that FEC fired McConkey with good cause. *McConkey*, ¶¶ 17, 27. On appeal, we held that the evidence could be considered because it generally "substantiate[d] the negative financial impact, referenced in the termination letter, that FEC suffered as a result of McConkey's activities." *McConkey*, ¶ 30.

12

# CONCLUSION

¶24    Because the *Galbreath* Rule is an evidentiary rule predicated on the Montana Rules of Evidence, it has not been superseded by the 1999 statutory amendments. However, while the *Galbreath* Rule precludes admitting irrelevant evidence of collateral reasons for discharge other than the sole reason stated in the discharge letter, evidence offered to substantiate the reasons already given in the discharge letter is admissible.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ JIM RICE