No. 98-065

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 193

JERRY McGILLEN,

Plaintiff and Appellant,

v.

PLUM CREEK TIMBER COMPANY,

Defendant and Respondent.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Katherine R. Curtis, Judge presiding.


COUNSEL OF RECORD:


For Appellant:


Dean K. Knapton, Attorney at Law, Kalispell, Montana


For Respondent:


Todd A. Hammer; Warden, Christiansen, Johnson & Berg, PLLP;

Kalispell, Montana


Submitted on Briefs: April 30, 1998

Decided: August 10, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶ **The plaintiff, Jerry McGillen, brought this action in the Eleventh Judicial District Court, Flathead County, alleging that he was wrongfully discharged by defendant Plum Creek Manufacturing, Inc. McGillen appeals from the jury's verdict in favor of Plum Creek. We affirm.**

¶ **We restate the issues on appeal as follows:**

¶ **1. Did the District Court err when it denied McGillen's motion for a new trial on the grounds of jury misconduct?**

¶ **2. Did the District Court err by denying McGillen's cross-motion for summary judgment?**

¶ **3. Did the District Court abuse its discretion by not allowing witnesses to give opinions on whether the appellant's conduct constituted a violation of company policy?**

¶ **4. Did the District Court abuse its discretion in allowing evidence that the appellant was discharged for reasons other than the one set forth in the discharge letter?**

FACTUAL AND PROCEDURAL BACKGROUND

¶ **Jerry McGillen worked at Plum Creek Manufacturing in Columbia Falls, Montana, for approximately fifteen years. Sometime in May 1995, McGillen placed an ad in the Mountain Trader, a weekly trade publication. The ad falsely stated that it was placed by John DeReu, McGillen's work supervisor. The ad appeared in the May 26, 1995, issue of the Mountain Trader and advertised the sale of a truck and indicated that interested persons should call late in the evening. The ad included DeReu's name and telephone number. McGillen had no permission or authority from DeReu to place the ad.**

¶ **Prior to the placement of the ad, DeReu had reported McGillen to Don Luce for sleeping on the job, and McGillen was suspended for that act. Luce is the plant manager at the Columbia Falls sawmill and is DeReu's supervisor and boss.**

¶ **At first, when confronted by his supervisors, McGillen denied any involvement with the ad. Later, he changed his position and admitted to placing the ad when Plum Creek hired an investigator.**

¶ **After reviewing the incident, Plum Creek terminated McGillen on June 7, 1995. Plum Creek found that McGillen had violated company policy. Specifically, Plum Creek found that McGillen's activities in placing the ad violated a section of the company's rules concerning intimidation. The Company Rules state, in pertinent part:**

> Violation of Company Rules will form the basis for immediate disciplinary action, which may include suspension or discharged [sic] depending on the severity of the offense. . . . Please be sure to review these rules with your supervisor when reporting to work.
>
> . . . .
>
> l. Intimidation and/or molestation of any individual or group of employees.

These rules had been explained to McGillen before he placed the ad in the paper. In fact, he had signed a statement stating that he understood these rules on October 10, 1978, when he started his employment with Plum Creek.

¶ **The reasons for McGillen's termination were given in a letter, dated June 7, 1995, from Don Luce. The discharge letter states, in relevant part:**

> The ad you placed in the Mountain Trader, dated May 26, 1995, in John DeReu's name soliciting late evening phone calls was definitely harassment and is not only against company policy but is against the law.
>
> Since you have admitted to the offense neither the DeReus or Plum Creek will file charges in this incident unless further harassment of any kind follows.
>
> Due to the seriousness of the violation your employment at Plum Creek is being terminated as of today, June 7, 1995.

¶ **On July 28, 1995, McGillen filed suit in the Eleventh Judicial District Court, Flathead County, for wrongful discharge. Both parties moved for summary judgment. Plum Creek argued that because McGillen violated company policy, it had good cause to fire him and, therefore, was entitled to summary judgment. McGillen argued that if there were no questions of fact, he should be entitled to summary judgment because Plum Creek did not have a legitimate business reason to fire him. The District Court denied both motions, ruling that whether McGillen's conduct violated Plum Creek's rules and constituted good cause for discharge was a question of fact for a jury to decide. A jury trial resulted in a verdict that McGillen had not been wrongfully discharged. McGillen appeals from the judgment and from his pretrial and post-trial motions. We affirm.**

## ISSUE 1

¶ **Did the District Court err when it denied McGillen's motion for a new trial on the grounds of jury misconduct?**

¶ **Section 25-11-102, MCA, enumerates the grounds upon which a new trial may be granted:**

> The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

> (1) irregularity in the proceedings of the . . . jury . . . by which either party was prevented from having a fair trial;

> (2) misconduct of the jury.

In this case, McGillen moved for a new trial on the grounds of jury misconduct pursuant to subsections (1) and (2) of the statute.

¶ **The decision to grant or deny a new trial is within the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of that discretion.** *Geiger v. Sherrodd, Inc.* **(1993), 262 Mont. 505, 508, 866 P.2d 1106, 1108;** *Henrichs v. Todd* **(1990), 245 Mont. 286, 291, 800 P.2d 710, 713. We will give considerable weight to the determination of the district court because it is in the best position to observe the jurors and determine the potential for prejudice when allegations of jury misconduct are raised, and the district court is properly vested with significant latitude when ruling on these matters.** *See State v. Gollehon* **(1993), 262 Mont. 293, 303, 864 P.2d 1257, 1263-64.**

¶ **McGillen claims jury misconduct or irregularity in the proceedings because a juror shared information with the other jurors that he knew one of Plum Creek's witnesses, Don Luce. The juror, James Trout, did not state in voir dire that he knew Luce. During the jury deliberations, the court received a note from Trout indicating "[t]he question has come up that I have met Mr. Luce on occasion during my career as a Banker in the Valley. Other jurors have stated that this results in an impairmant [sic] of my judgement in this matter." Specifically, Trout told the other jurors that Luce was not intimidating.**

¶ **McGillen made a motion for a mistrial. The court denied the motion. The court also did not allow his requests to interview the entire jury panel. However, the court did ask Trout if he could make a fair and impartial decision in this matter based strictly upon the evidence as presented during the trial, to which he answered, "Absolutely." After the verdict was rendered, McGillen filed a post-trial motion for a new trial, again raising his complaints regarding possible jury misconduct. This motion was accompanied by affidavits of two jurors. On October 7, 1997, the District Court denied McGillen's motion for a new trial.**

¶ **On appeal, McGillen argues that the District Court should have granted him a new**

trial pursuant to § 25-11-102, MCA, on the grounds of jury misconduct by Trout in failing to acknowledge his relationship with Luce during voir dire. McGillen contends Trout became a witness, giving testimony about Luce, and that created an irregularity in the trial by bringing evidence into deliberations that was not presented at trial.

¶ The District Court denied McGillen's motion for a new trial for three reasons. First, the court stated that the information allegedly shared by Trout was not relevant to the issues before the jury. The central issue before the jury was whether McGillen's conduct was intimidating to DeReu. The issue was not whether Luce was intimidating to McGillen. Second, the court found that the juror affidavits set forth internal, rather than external, influences on the jury and, therefore, are inadmissible pursuant to Rule 606(b), M.R.Evid. Third, the court noted that the jury took a vote prior to Trout's comment which was 8-4 in favor of Plum Creek. When the verdict was announced, this vote was not changed as a result of the shared information. The court noted that the votes serve to rebut any contention that McGillen was prejudiced by Trout's conduct as a member of the jury.

¶ We agree with the District Court that Trout's admission during jury deliberations was an internal, rather than external, influence on the jury's verdict. Rule 606(b), M.R.Evid., sets forth the limited circumstances when a court may receive an affidavit regarding a jury's deliberations in order to impeach a verdict. Rule 606(b), M.R. Evid., states:

> **Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

> However, as an exception to this subdivision, a juror may testify and an affidavit or evidence of any kind be received as to any matter or statement concerning only the following questions, whether occurring during the course

of the jury's deliberations or not: (1) whether extraneous prejudicial information was improperly brought to the jury's attention; or (2) whether any outside influence was brought to bear upon any juror; or (3) whether any juror has been induced to assent to any general or special verdict, or finding on any question submitted to them by the court, by a resort to the determination of chance.

¶ In *Harry v. Elderkin* (1981), 196 Mont. 1, 7-8, 637 P.2d 809, 813, we set forth when jury affidavits may be used to impeach a jury verdict. *Harry* states:

> The cases on the use of juror affidavits fall into two major categories: 1) those involving external influence on the jury and 2) those involving internal influence on the jury. Where external influence is exerted on the jury or where extraneous prejudicial information is brought to the jury's attention, juror affidavits can be the basis for overturning the judgment if either party was thereby deprived of a fair trial. On the other hand, juror affidavits may not be used to impeach the verdict based upon internal influences on the jury, such as a mistake of evidence or misapprehension of the law.

*Harry*, 196 Mont. at 7-8, 637 P.2d at 813 (citations omitted). Moreover, knowledge and information shared by one juror to another or others is not an extraneous influence. *State v. Hage* (1993), 258 Mont. 498, 508-09, 853 P.2d 1251, 1257.

¶ McGillen's contention regarding Trout's comment about Luce does not fall within the three exceptions to Rule 606(b), M.R.Evid. It was merely a statement regarding Trout's personal knowledge of one of the witnesses. The affidavits submitted by McGillen do not show that the jurors were influenced or prejudiced by Trout in reaching their decision. Thus, Trout's comment was an internal influence and, therefore, cannot be used to impeach the jury verdict.

¶ As stated above, a district court has wide latitude in determining whether jury misconduct occurred. In this case, the District Court conducted an inquiry to determine whether Trout could sit on the jury, despite having knowledge of one of

Plum Creek's witnesses, Don Luce. The court determined that Trout could sit as a fair and impartial juror.

¶ We conclude that the District Court did not abuse its discretion when it ruled that McGillen could not impeach the jury verdict through affidavits because there were no external prejudicial influences on the jury. Accordingly, we hold that the court did not manifestly abuse its discretion in denying McGillen's motion for a new trial.

ISSUE 2

¶ **Did the District Court err by denying McGillen's cross-motion for summary judgment?**

¶ McGillen argues that the District Court erred by not ruling as a matter of law that his discharge was wrongful. The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

¶ McGillen contends that his use of a lawful product cannot be a legitimate business reason for an employee discharge. In other words, he asserts that placing a fictitious ad in the Mountain Trader, on his own time outside of work, in the name of his supervisor, was merely a practical joke and could not be used as a reason for Plum Creek to discharge him. McGillen relies on § 39-2-903(5), MCA, which states, in part, that "[t]he legal use of a lawful product by an individual off the employer's premises during nonworking hours is not a legitimate business reason."

¶ In the District Court, both parties moved for summary judgment. Plum Creek argued that because McGillen admitted that he had violated company policy, it had good cause to fire him and, thus, was entitled to summary judgment. In response, McGillen argued that although he had admitted to a violation of the company rules, there remained a question of fact as to whether the rule or policy was fair, job related, and in furtherance of a legitimate business purpose. McGillen further argued that there was also an issue of material fact regarding whether his conduct amounted to harassment or intimidation under the company rules. In conclusion, he stated if the court believed there were no issues of fact, then it should rule as a matter

of law that his discharge was wrongful.

¶ **The District Court denied both parties' motions for summary judgment. The court stated:**

> [McGillen] is correct that [Plum Creek] is bound by the reasons set forth in the [discharge] letter, and there seem to be issues of fact regarding whether the application of the rule prohibiting harassment or intimidation to [McGillen]'s conduct in this case constitutes 'good cause' within the meaning of the Wrongful Discharge from Employment Act. . . . Granted that [McGillen] has acknowledged violating a company policy, and granted that the 'fairness' of the policy is not the issue, the Court cannot rule as a matter of law that the application of the company rule to the [McGillen]'s conduct constitutes 'reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties . . . or other legitimate business reason.' Section 39-2-903(5), M.C.A.

(Citations omitted.)

¶ **The District Court did not specifically rule on McGillen's argument that he should not have been discharged because his conduct involved the "legal use of a lawful product." Instead, it ruled that there was a genuine issue of material fact as to whether his conduct constituted reasonable grounds for dismissal.**

¶ **McGillen raised the issue again when the parties were settling jury instructions. He requested the court to instruct the jury that "[l]egal use of a lawful product by an individual off the employee's premises during non-working hours is not a legitimate business reason." The District Court rejected the argument again. The court noted that "lawful product," as defined in § 39-2-313, MCA, means a product that is legally consumed, and includes food, beverages, and tobacco. The court found that the placing of a newspaper ad did not fall within the definition.**

¶ **We agree with the District Court that it could not rule as a matter of law that McGillen's conduct in placing a fictitious ad in his supervisor's name was a legitimate use of a lawful product that would preclude Plum Creek from firing him.**

The purpose of § 39-2-903(5), MCA, is to protect an employee from discharge for the use of a legal product, such as alcohol or tobacco, off the employer's premises.

¶ We conclude that the District Court did not err in denying McGillen's cross-motion for summary judgment. The court was correct in ruling that whether it was reasonable for Plum Creek to apply the rule prohibiting harassment or intimidation to McGillen's conduct and fire him was an issue for the jury to decide.

## ISSUE 3

¶ Did the District Court abuse its discretion by not allowing witnesses to give opinions on whether the appellant's conduct constituted a violation of company policy?

¶ McGillen argues that the District Court abused its discretion by not allowing McGillen's witnesses to testify about whether or not the firing was justified. We review evidentiary rulings by the district court to determine whether the district court abused its discretion. *State v. Passama* (1993), 261 Mont. 338, 341, 863 P.2d 378, 380. The district court has broad discretion to determine whether evidence is relevant and admissible, and absent a showing of abuse of discretion, the trial court's determination will not be overturned. *Passama*, 261 Mont. at 341, 863 P.2d at 380.

¶ The District Court granted Plum Creek's motion in limine to prevent witnesses from testifying and giving their personal opinions on matters which were ultimately legal issues in this case. Specifically, the court did not allow witnesses to give their opinions regarding whether they thought the firing was justified.

¶ McGillen contends that he would have offered testimony from fellow employees as to whether his firing was justified. McGillen asserts that this testimony would have been relevant to prove that the company rules would not have been interpreted by employees to mean that they would have been fired for placing false advertisements. Also, he contends that this testimony would have been helpful to the jury in order to determine whether taking out a false advertisement would have been perceived as a violation of company policy.

¶ The ultimate question before the jury was whether McGillen was wrongfully discharged by Plum Creek for violating its company rules. We determine that

witnesses' personal opinions about whether or not they thought McGillen's conduct constituted a violation of company policy would be irrelevant under Rule 701, M.R. Evid. This was a matter for the jury to decide. It also serves no purpose because McGillen admitted in his deposition and at trial that he had violated the company's rules. Thus, we conclude that the District Court did not abuse its discretion by precluding this type of testimony.

ISSUE 4

¶ Did the District Court abuse its discretion in allowing evidence that the appellant was discharged for reasons other than the one set forth in the discharge letter?

¶ McGillen claims that the District Court erred by not granting his motion to limit testimony to the fictitious ad, the sole reason given in the letter of discharge, and allowing testimony regarding an earlier incident in which Plum Creek suspended McGillen for sleeping on the job. As stated above, we review evidentiary rulings by the district court to determine whether the district court abused its discretion. *Passama*, 261 Mont. at 341, 863 P.2d at 380.

¶ McGillen made a motion in limine to prohibit references to other reasons for the discharge which are not contained in the June 7, 1995, letter. Specifically, McGillen wanted to prohibit any testimony involving when he was disciplined by Plum Creek for sleeping on the job, and whether he had ever lied about placing the fictitious ad. Plum Creek responded that evidence of the sleeping incident was necessary for the jury to put the stated reason for the discharge in context.

¶ The District Court granted McGillen's motion in limine in part and denied it in part. The court ruled that:

> The stated reason for the discharge was harassment in violation of the law and company policy. Clearly, under Galbreath v. Golden Sunlight Mines, 270 Mont. 19 (1995), [Plum Creek] cannot offer evidence suggesting that [McGillen] was discharged for other reasons. However, reference to the incident in which [McGillen] was apparently disciplined for sleeping on the job, which apparently immediately preceded the placing of the ad for which

he was discharged, is necessary for the jury to assess the stated reason for the discharge.

However, McGillen argues that the District Court did not follow *Galbreath v. Golden Sunlight Mines, Inc.* (1995), 270 Mont. 19, 890 P.2d 386, because Plum Creek presented reasons for his discharge beyond the reason given in the letter of discharge.

¶ **A review of the trial transcript shows that Plum Creek offered testimony that McGillen was fired for placing the fictitious ad. Any testimony offered regarding McGillen being suspended for the sleeping on the job incident was included with testimony that it was not the reason for his discharge. In fact, the only reason that Plum Creek offered for McGillen's discharge at trial was the placing of the fictitious ad.**

¶ **Furthermore, the District Court gave the jury Instruction No. 9 which stated:**

> In a wrongful discharge action the only reason for discharge that can be considered is the reason set forth in the discharge letter. Evidence of lying by the Plaintiff is not justification for the discharge, but may be considered by you for other purposes.

McGillen did not object to this instruction before the case was given to the jury.

¶ **We determine that the District Court properly limited testimony regarding the reasons for McGillen's discharge to those stated in the discharge letter. Any testimony offered with respect to McGillen being disciplined for sleeping on the job was relevant and, therefore, admissible, to tell the jury a possible motive for McGillen placing the ad in the first place.**

We conclude that the District Court did not abuse its discretion in allowing any evidence or testimony that McGillen was discharged for reasons other than the one set forth in the discharge letter.

¶ **Affirmed.**

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

Justice W. William Leaphart, specially concurring.

¶47 I concur with the Court's resolution of Issues 2, 3 and 4 and I specially concur as to Issue 1 which addresses the District Court's denial of McGillen's motion for a new trial on the grounds of jury misconduct. McGillen claims jury misconduct or irregularity in the proceedings because juror Trout shared information with other jurors that he knew one of Plum Creek's witnesses, Don Luce. Specifically, juror Trout told the other jurors that Luce

was not intimidating.

¶48 For the reasons set forth in my specially concurring opinion in State v. Kelman (1996), 276 Mont. 253, 263, 915 P.2d 854, 860, I do not agree with the Court's conclusion that Trout's sharing of this information was an internal rather than an external influence on the jury's verdict. However, since the issue before the jury was whether McGillen's conduct was intimidating, not whether Luce was intimidating to McGillen, the external influence, if any, was not relevant to the jury's deliberations. Furthermore, as noted by the Court, the affidavits submitted by McGillen do not show that the jurors were influenced or prejudiced by Trout in reaching their decision. Accordingly, I would hold that any error resulting from the jury misconduct was harmless.

/S/ W. WILLIAM LEAPHART