CHIEF JUSTICE McGRATH
delivered the Opinion of the Court.
¶1 In September 2010 a jury in the Fourteenth Judicial District Court, Musselshell County, convicted Bobby Cooksey of deliberate homicide. The District Court sentenced Cooksey to a term of fifty years in the Montana State Prison with credit for time served, and Cooksey appeals. We affirm.
¶2 Cooksey presents the following issues for review: (1) whether the District Court properly denied Cooksey’s motion for a new trial; (2) whether the District Court properly excluded Cooksey’s offered evidence concerning the presence of the drug Paxil in the deceased’s blood; (3) whether the State was required to conduct an investigation to discover evidence to support Cooksey’s claim of justifiable use of force; and (4) whether the prosecutor’s closing argument amounted to prosecutorial misconduct.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 Cooksey lived in a rural area outside of Roundup, Montana and one of his neighbors was Tracey Beardslee. Beardslee’s access to his property was via a road easement that crossed Cooksey’s property. Beardslee had lived adjacent to Cooksey for several years and the two *348 had several verbal altercations. On July 7, 2009, Cooksey, by his account given to law enforcement investigators, heard his dogs barking and left his house armed with a large-bore lever-action rifle. He walked toward his dogs and saw Beardslee using a weed-whacker to clear weeds along the margins of the easement. Cooksey walked toward Beardslee and asked him what he was doing on Cooksey’s property. Cooksey claimed that Beardslee then “went off,” cussed him, said he would kick Cooksey’s ass, and finally that he would kill Cooksey. At that moment Cooksey lifted his rifle and fired, sending a bullet through Beardslee’s chest and killing him. Cooksey returned to his house, called 911, and reported that he had shot Beardslee.
¶4 Musselshell County deputies responded to the call, secured the scene and called in the State Division of Criminal Investigation to investigate the incident. The responding deputies obtained Cooksey’s consent to secure the weapon he used. Later that day a State investigator arrived and took Cooksey’s voluntary statement about what had happened. The investigation determined facts about the background relationship between Cooksey and Beardslee; about what Cooksey saw and what he did; and about what Beardslee did based upon Cooksey’s account. The investigation obtained a chemical analysis of Beardslee’s blood and, at the request of the defense, a second analysis at a laboratory in Pennsylvania.
¶5 By Cooksey’s own admission Beardslee had never physically attacked him and did not do so on the day he died. When Cooksey fired the shot there was a wood pole fence and a barbed wire fence between him and Beardsley, and Beardsley was still weed whacking and was moving back toward his own house. Cooksey observed a folding knife in a case on Beardslee’s belt but never saw him pull it out.
¶6 Other facts will be noted as necessary to discuss the issues raised on appeal.
STANDARD OF REVIEW
¶7 The standard of review will be discussed in regard to each issue.
DISCUSSION
¶8 Issue One: Whether the District Court properly denied Cooksey’s motion for a new trial based upon juror misconduct.
¶9 A convicted defendant may move for a new trial within 30 days of the guilty verdict. The motion must be in writing, must specify the grounds for a new trial, and must be served upon the prosecution. The district court may grant a new trial “if required in the interest of justice.” Section 46-16-702, MCA. Cooksey’s motion for a new trial was *349 based upon several grounds. He subpoenaed several witnesses to testify at the hearing on the motion, which occurred on December 3, 2010. The District Court subsequently denied the motion in a written order.
¶10 A district court’s decision on a motion for a new trial and its decision on issues of jury impartiality are reviewed for abuse of discretion, State v. Dunfee, 2005 MT 147, ¶ 14, 327 Mont. 335, 114 P.3d 217, unless the specific issue requires a different standard of review, State v. Ariegwe, 2007 MT 204, ¶ 164, 338 Mont. 442, 167 P.3d 815. A district court commits an abuse of discretion when it acts arbitrarily, without conscientious judgment, and exceeds the bounds of reason in a way prejudicial to the defense. Ariegwe, ¶ 164.
¶11 First, Cooksey contends that there was structural error prior to the start of trial. He contends that some prospective jurors made improper and prejudicial statements while the prospective jurors were waiting in a church basement meeting room near the courthouse. Prior to trial the District Court determined that there was not sufficient room in the courthouse to safely and adequately accommodate all the 80 or so prospective jurors prior to commencement of jury selection. The District Court decided to hold the prospective jurors, identified as such by stickers they were given when they signed in, and accompanied by two bailiffs, in a church basement meeting room near the courthouse until jury selection began. The District Court explained this to the prosecution and the defense well before the start of trial, and neither side made any objection or requested that any other steps be taken. Specifically, neither side requested that any cautionary instructions be given.
¶12 On the morning of the first day of trial the District Court concluded the final pretrial conference with the prosecution and defense and considered several requests from prospective jurors that they be excused. The prospective jurors were then escorted to the courtroom, there was a roll call, and the prospective jurors were sworn to truly answer all questions asked of them. By the District Court’s own description, there were no time limits or restrictions on voir dire and the attorneys were permitted to ask “every question they desired of the prospective jurors, including whether they could put aside anything they had heard about the case and render a fair and unbiased decision based only upon the evidence presented in court.”
¶ 13 Second, Cooksey alleges error within the jury deliberation process itself. Cooksey offered evidence that seated juror Beres commented during deliberations that the decedent Beardslee visited her mother’s house, and would cease being loud or verbally abusive when Beres’ *350 mother asked him to do so. This would establish that at least the juror’s mother knew the decedent and that the juror had discussed the decedent with her mother.
¶14 After trial and at the hearing on the motion for a new trial, Cooksey presented the testimony of prospective juror Mark Lurie, who contended that there was a loud “circus atmosphere” in the church basement, that at least one prospective juror was loudly proclaiming Cooksey’s guilt, and that bailiffs were nowhere to be seen. Prospective juror Newman, who was ultimately excused, testified that she heard prospective juror Simms, who was also excused, express his opinions that the killing was wrong and that it was not right to kill someone in cold blood. Other persons who were present heard other statements that they could no longer recall.
¶15 Witness Roy Dickerson, who was presented by the State, had also been a prospective juror in the church basement. He testified that there was no loud circus atmosphere, but that the gathering of jurors was subdued and somber. He testified that it was in fact Mr. Lurie who was talking loudly and incessantly about his claimed legal experience and knowledge of the legal system, to such an extent that he would be surprised if Lurie heard anything that anyone else said. Dickerson testified that the bailiffs were clearly identified with name tags and that he did not hear negative comments about either side of the case. None of the other witnesses who testified at the motion hearing corroborated Lurie’s account of the atmosphere and content of discussions in the church basement.
¶16 The District Court specifically found that Lurie’s account of the matter was not credible and that Dickerson’s testimony was “completely credible.” Despite Lurie’s professed attention to detail, he could not remember important details on cross- examination, and while claiming to have a guilty conscience based upon what he had witnessed, never reported it to anyone until after he learned of the guilty verdict. At that time he contacted the defense. The District Court also found that Lurie’s demeanor while testifying was the same as that observed by Dickerson in the church basement. The District Court specifically found that while testifying at the hearing, Lurie “spoke loudly and incessantly until interrupted by the court and counsel”; that he was “overly eager to talk about his experience as a fraud investigator/threat analyst and his purported prior experience with the court system”; that his testimony was “self aggrandizing”; and that “he appeared intent on presenting himself in an overly virtuous manner” while being “gratified to be the center of attention.”
¶17 It is the District Court’s province to determine the weight of the *351 evidence. Albert v. Hastetter, 2002 MT 123, ¶ 30, 310 Mont. 82, 48 P.3d 749. We conclude that the District Court did not abuse its discretion in rejecting Lurie’s version of events.
¶18 As to alleged misconduct during the jury deliberations, M. R. Evid. 606(b) materially circumscribes evidence that may be given by a juror “[u]pon inquiry into the validity of a verdict.” In summary, Rule 606(b) allows for juror testimony to impeach a verdict “only if the evidence is used to determine whether the jury was influenced by extraneous, prejudicial information, or any outside influence, or whether a particular juror has reached a specific determination as a result of chance.” State v. Hoffman, 2003 MT 26, ¶ 50, 314 Mont. 155, 64 P.3d 1013. (Rule 606 prohibits a juror from giving evidence that defendant would have been convicted of a lesser offense if a lesser included offense instruction had been given.) Juror testimony or evidence may be admitted only to establish that the jury was subjected to external influence such as a juror obtaining information about previous litigation, a visit to the scene of the incident, or bringing newspaper articles to the jury. State v. Kelman, 276 Mont. 253, 262, 915 P.2d 854, 860 (1996).
¶ 19 It is established that “knowledge and information shared from one juror to another or others is not an extraneous influence” which may be proven by evidence admissible under M. R. Evid. 606(b). Kelman, 276 Mont. at 262, 915 P.2d at 860 (juror statement during deliberations that defendant owned a strip joint was not admissible to impeach the verdict). Examples of inadmissible “internal influences” on the jury include the jury’s use of “demonstrative evidence or experimentation with the evidence; pressure by other jurors; and knowledge and information shared from one juror to another or others.” State v. Lawlor, 2002 MT 235, ¶ 12, 311 Mont. 493, 56 P.3d 863.
¶20 Rule 606(b) as previously construed by this Court applies here and precludes the types of verdict impeachment posited by Cooksey. The alleged statements, even if they had been established as fact, would have been at most internal influences, insufficient to alter the outcome of the case and inadmissible under M. R. Evid. 606(b). The Beres information was not properly admissible under Rule 606(b). It is analogous to the juror statement in Kelman that the defendant owned a strip bar, and that statement was excluded under Rule 606(b). Kelman, 276 Mont. at 262, 915 P.2d at 860; McGillen v. Plum Creek Timber Co., 1998 MT 193, ¶ 20, 290 Mont. 264, 964 P.2d 18 (juror disclosure during deliberation that he knew a witness is internal influence and not admissible). The Beres statement was not *352 prejudicial, rather it was at most ambiguous and did not obviously help or hinder the defense. On the one hand the statement might be construed to show Beardslee to be a compliant houseguest, while on the other it might show him to be obnoxious in another’s home.
¶21 Moreover, the Beres evidence was not disclosed to the prosecution in the motion for a new trial as required by § 46-16-702, MCA. The District Court was therefore within its discretion to disallow the evidence. Upon review, we conclude that the District Court did not abuse its discretion in denying the motion for a new trial on the jury misconduct issues.
¶22 Finally, Cooksey contends that defense counsel rendered ineffective assistance by failing to call on Beres during voir dire and thereby discover that her mother knew the decedent. Since we have concluded that the Beres statement during deliberations was not admissible or prejudicial, there was no error to consider in a plain error review.
¶23 Issue Two: Whether the District Court properly excluded Cooksey’s offered evidence concerning the presence of the drug Paxil in the deceased’s blood.
¶24 A district court has broad discretion to determine the relevance and admissibility of evidence, and this Court reviews evidentiary rulings for abuse of discretion. State v. Passmore, 2010 MT 34, ¶ 51, 355 Mont. 187, 225 P.3d 1229.
¶25 The State Crime Lab conducted an autopsy of the decedent’s body after the shooting, and thereafter sent tissue samples to a laboratory out of state for additional testing. The initial toxicology report from the autopsy showed a number of drugs in the decedent’s body, including Methadone. The additional laboratory testing detected the presence of a small, sub-therapeutic level (20 nanograms per milliliter) of the drug Paxil. The defense had copies of the reports from both the State Crime Lab and the out-of-state lab before trial. The defense presented expert testimony at trial through Dr. Bennett as to the autopsy report and the possible effects on the decedent’s behavior of the drugs that were detected. The defense contention was that at least some of the drugs could have caused Beardslee to act aggressively.
¶26 During the sixth day of trial the defense first requested leave to call an unidentified person from the out-of-state lab to lay the foundation for admission of that lab’s report regarding the Paxil. The defense also requested leave to call Dr. Bennett to testify as to the significance of the Paxil in the decedent’s body. The defense contention was that the Paxil could also cause the decedent to act aggressively toward Cooksey.
*353 ¶27 The prosecution objected on the ground that the defense had not previously disclosed its intent to use this report and that the report could not be admitted without establishing a proper foundation. The District Court allowed the defense to make an offer of proof through Dr. Bennett about the significance of the Paxil. Dr. Bennett stated that the amount of Paxil was in a “low therapeutic” or “sub therapeutic” range and that Paxil is an antidepressant designed to “cheer you up.” He stated that there was “anecdotal evidence” that Paxil can cause suicidal or homicidal behavior, meaning that “there is a claim, a story unproven by testing” that has “never made it through the scientific steps.” He had heard of one case in which a person with Paxil in his system had committed murder, but did not know whether the Paxil influenced the conduct.
¶28 The District Court excluded the proposed evidence because the defense had not disclosed it to the prosecution and had not shown good cause for the failure to disclose. Section 46-15-323(5), MCA, requires a defendant to disclose the name of each person he intends to call to support a defense of justifiable use of force. After trial starts, the defense may not call any witness in support of a defense of justifiable use of force if that witness had not been previously listed, except upon a showing of good cause. The district court may preclude a defendant from calling a witness who was not disclosed. Section 46-15-329(4), MCA; State v. DeMary, 2003 MT 307, ¶ 17, 318 Mont. 200, 79 P.3d 817. The District Court’s Omnibus Hearing Memorandum entered in October 2009, required both prosecution and defense disclosure of witnesses “immediately and on a continuing basis.” Cooksey did not comply with these requirements concerning the Paxil testimony and did not demonstrate any good cause for the failure.
¶29 The proposed testimony of Dr. Bennett, as demonstrated through the defense offer of proof, was not properly expert testimony under M. R. Evid. 702. That Rule provides for expert testimony if “scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue.” Dr. Bennett, even though he previously testified as an expert in the case concerning the other drugs found in the decedent’s body, clearly had no scientific, technical or other specialized knowledge about the relationship, if any, between Paxil and aggressive behavior. He stated that his information was merely anecdotal and had not been scientifically tested. The District Court specifically recognized that the proposed evidence was “highly speculative, of questionable relevance, and will, without more, serve to confuse and mislead the jury.”
¶30 The jury heard expert testimony about the significance of the *354 drug Methadone in the decedent’s body. The tenuous information about Paxil, in addition to its other problems noted above, added nothing to the defense, and exclusion of the proffered Paxil evidence in this case was proper and not an abuse of discretion. Valley Bank v. Hughes, 2006 MT 285, ¶¶ 42-45, 334 Mont. 335, 147 P.3d 185 (expert in banking properly excluded from testimony because she was not an expert in the crucial standard of care involved in the case).
¶31 Issue Three: Whether the State was required to conduct an investigation to discover evidence to support Cooksey’s claim of justifiable use of force.
¶32 This Court reviews de novo a district court’s interpretation of a statute. State v. Daniels, 2011 MT 278, ¶ 11, 362 Mont. 426, 265 P.3d 623. In doing so we are guided by the long-held maxim that legislative intent must first be determined from the plain words used in the statute, and when that is possible no other means of interpretation are proper. City of Missoula v. Cox, 2008 MT 364, ¶ 9, 346 Mont. 422, 196 P.3d 452. Courts may not disregard the plain language of a statute. Bank of America v. Ivey, 2010 MT 131, ¶ 10, 356 Mont. 388, 234 P.3d 867. The court’s role is to ascertain and declare what is in “terms or in substance contained” in a statute, and not to insert what is omitted or omit what is inserted. Section 1-2-101, MCA.
¶33 Prior to trial Cooksey filed a “Motion for Compliance with Mont. Codes Ann. § 45-3-112” in which he requested that the District Court order the prosecution to provide a list of specific items including the decedent’s complete medical records; all drug and alcohol evaluations of the decedent; the decedent’s complete criminal record; a copy of all mental health records of the decedent; and “any other evidence of Mr. Beardslee’s violent character to demonstrate the reasonableness of force used by the Defendant.” The District Court conducted a hearing on the motion, and the defense called several County Sheriffs Deputies to testify regarding whether they had adequately secured the crime scene and whether they had “investigated” Cooksey’s claim of justifiable use of force.
¶34 Section 45-3-112, MCA, was enacted in 2009 and provides:
When an investigation is conducted by a peace officer of an incident that appears to have or is alleged to have involved justifiable use of force, the investigation must be conducted so as to disclose all evidence, including testimony concerning the alleged offense and that might support the apparent or alleged justifiable use of force.
The District Court noted that in all criminal cases the prosecution has a long-established duty to provide to the defense any exculpatory *355 evidence in its possession. Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963); State v. Ellison, 2012 MT 50, ¶ 15, 364 Mont. 276, 272 P.3d 646. State statute also imposes broad obligations on the prosecution in all criminal cases to disclose evidence to the defense, § 46-15-322, MCA, and those obligations extend to disclosure of all “material and information” held by staff members and by any other persons who have “participated in the investigation or evaluation of the case.” Section 46-15-322(4), MCA.
¶35 The District Court construed § 45-3-112, MCA, to reflect these established obligations, and to require the prosecution to disclose any evidence it had that was relevant to the defense of justifiable use of force. At the hearing on the defense motion, the District Court stated:
Effectively the defense argues that law enforcement has an independent duty under this set of statutes to conduct a separate investigation into the claim of self-defense. I guess I don’t go that far on my reading of the statute. It just appears to me that they’re obligated to conduct a thorough investigation, which may or may not include issues regarding self defense. If they do gather evidence that is potentially exculpatory, or supports the affirmative defense of self-defense, then they had a duty to disclose it to the defense.
The District Court’s order further noted that evidence of aggressive or violent tendencies of the decedent must have been known to Cooksey prior to the homicide before they could be relevant, consistent with established Montana law. State v. Branham, 2012 MT 1, ¶ 10, 363 Mont. 281, 269 P.3d 891. The District Court required the prosecution to produce the decedent’s criminal record for in-camera inspection.
¶36 The District Court refused to construe § 45-3-112, MCA, to impose any new and independent duty for law enforcement to investigate cases involving justifiable use of force. On appeal Cooksey does little to explain how § 45-3-112, MCA, requires or supports a dismissal of the homicide charge against him. He points to nothing in the language of the statute that requires that law enforcement conduct an independent investigation for the defense in every justifiable use of force case and points to no language requiring dismissal of charges. He points to no actual or even potential evidence that was relevant to justifiable use of force that was lost, withheld or not discovered during the course of the investigation. He points to no classes of potential evidence that contained information relevant to his defense.
¶37 The language of § 45-3-112, MCA, is plain and clear on its face. It requires an officer conducting an investigation in a case involving the defense of justifiable use of force to conduct that investigation so as to *356 “disclose all evidence” (emphasis added) that might support the defense. This is consistent with the disclosure obligations upon prosecutors and law enforcement officers arising from the Brady case. It is consistent with Montana statutory and case law. Section 45-3-112, MCA, plainly requires that “evidence” that would support the defense of justifiable use of force must be made available for disclosure to the defense. Cooksey has not pointed to any evidence that would support his defense that was not disclosed.
¶38 The District Court’s construction of § 45-3-112, MCA, was a correct application of the statute as enacted by the Legislature and we find no error.[1]
¶39 Issue Four: whether the prosecutor’s closing argument amounted to prosecutorial misconduct.
¶40 This Court reviews a district court’s rulings on objections to closing argument content for abuse of discretion. State v. Green, 2009 MT 114, ¶ 14, 350 Mont. 141, 205 P.3d 798. Closing argument statements are considered in the context of the entire argument, State v. Robideaux, 2005 MT 324, ¶ 15, 329 Mont. 521, 125 P.3d 1114. The defendant must make a timely objection to closing argument statements or the objection is deemed to be waived. State v. Racz, 2007 MT 244, ¶ 36, 339 Mont. 218, 168 P.3d 685. We will undertake plain error review of closing argument objections not stated at trial if we are persuaded that the prosecutor’s comments resulted in a manifest miscarriage of justice, undermined the fundamental fairness of the trial, or compromised the integrity of the judicial process. Racz, ¶ 36. ¶41 Cooksey points to two statements made during the prosecution’s closing argument. The first:
We certainly have chased our tails a bit over the last two weeks. But please remember that the defendant has an absolute right to go to trial and to be tried by his peers, you folks sitting here. He has that right no matter how much evidence there is against him. The defendant in a trial is not required, and especially in this trial, is not required to prove anything. It is solely the State’s burden to prove this case beyond a reasonable doubt.
*357 Cooksey did not object to this comment at trial. Cooksey also challenges the prosecution’s last statement in closing, urging the jury: “Find this man guilty. Protect society. And protect your neighbors.” The defense objected contemporaneously, requesting that the jury be admonished to disregard the remark. The District Court sustained the objection by admonishing the jury to “disregard that remark.”
¶42 As to the first remark concerning the volume of evidence, Cooksey contends that it implied that he was abusing the system by exercising his right to a jury trial. He contends in a brief footnote that this Court should consider this as “plain error” even though there was no contemporaneous objection. We decline to do so. Cooksey’s brief contains no cogent argument or analysis as to why plain error review should be invoked in this case. We invoke plain error only sparingly, on a case-by-case basis, where failing to do so may result in a manifest miscarriage of justice, may leave unsettled the fundamental fairness of the trial, or may compromise the integrity of the judicial process. State v. West, 2008 MT 338, ¶ 23, 346 Mont. 244, 194 P.3d 683. We perceive no such situation in this case with regard to the cited remarks. See State v. Staat, 251 Mont. 1, 10, 822 P.2d 643, 648-49 (1991) (prosecutor may comment on the volume of evidence).
¶43 The prosecutor’s last comment admonishing the jury to protect society and their neighbors drew a prompt objection from the defense and a request that the jury be admonished. The District Court did so, admonishing the jury to disregard the remark. Prompt cautionary instructions can cure the prejudicial effect of a remark made in closing argument when the jury is cautioned to disregard the statement. Ariegwe, ¶ 166; State v. Dubois, 2006 MT 89, ¶ 61, 332 Mont. 44, 134 P.3d 82.
¶44 The District Court’s admonishment, together with the instructions given to the jury, clearly undermines Cooksey’s contention that there was an abuse of discretion. The District Court instructed the jury to decide the case uninfluenced by passion or prejudice, and to not be biased against the defendant because he was arrested, charged or tried for the offense because none of those facts is evidence of guilt. The District Court instructed the jury that they may not be governed by sentiment, conjecture, sympathy, passions, prejudice, public opinion or public feeling because both sides had the right to expect a conscientious and dispassionate verdict, weighing the evidence and applying the law. The District Court instructed the jury that the evidence of one witness was sufficient to prove any fact, and that they were not to decide based upon the number of witnesses called. The District Court instructed that the State has the burden to prove guilt *358 beyond a reasonable doubt; that the defendant is presumed innocent; and that the defendant is not required to prove his innocence or even to present any evidence.
¶45 Considering the relevant circumstances, Cooksey has not demonstrated that he is entitled to a new trial because of the content of the closing argument.
CONCLUSION
¶46 The motion for a new trial based on juror misconduct was properly denied. The District Court had the discretion to exclude Cooksey’s proffered evidence regarding the presence of a small amount of the drug Paxil in the decedent’s blood. The investigation of the crime was conducted in compliance with § 45-12-112, MCA. Cooksey failed to establish that the prosecution’s statements during closing argument constituted unfairly prejudicial misconduct.
¶47 On June 24, 2011, Bobby Cooksey’s wife Debra appeared in this case through counsel and moved to intervene in the appeal to raise issues concerning satisfaction of restitution ordered as part of Bobby Cooksey’s sentence. This Court granted that motion over the State’s objection that Debra Cooksey had no standing to intervene in Bobby Cooksey’s appeal of his criminal conviction. The District Court determined that Debra Cooksey failed to support her claim of ownership in the property or her claim that the property was exempt from execution to satisfy the restitution owed by Bobby Cooksey. Bobby Cooksey did not raise any issue on appeal concerning his sentence or the portion of the sentence that required him to pay restitution. After further consideration this Court has concluded that the motion to intervene was improvidently granted.
¶48 For the reasons stated above, the motion of Debra Cooksey to intervene is denied.
¶49 The conviction and sentence are affirmed.
JUSTICES WHEAT, COTTER, BAKER and MORRIS concur.

 The dissent argues at length that § 45-3-112, MCA, imposes a special investigative duty upon law enforcement officers to uncover evidence “not yet” in their possession, applicable only to cases that do or might involve a claim of justifiable use of force. There is nothing in the statute that covers evidence “not yet” in the possession of investigators and it is far from clear how such evidence could even be identified. In the end, and recognizing the many general rules of statutory construction, the dissent’s argument is just that: an alternative way to construe the statute by adding certain concepts to it.