DA 11-0311

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 50

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JERIMIE R.L. HICKS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDC 10-084
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joseph P. Howard, Attorney at Law, Great Falls, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Pamela P. Collins, Assistant
Attorney General, Helena, Montana

          John Parker, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  November 14, 2012
Decided:  February 26, 2013

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Jerimie R.L. Hicks (Hicks) appeals from his convictions of deliberate homicide and solicitation to tamper with physical evidence in the Eighth Judicial District Court, Cascade County.  We affirm.

¶2     Hicks presents the following issues for review:

¶3     *Issue One:  Whether the District Court properly concluded that assault on a minor is a forcible felony under the deliberate homicide statute.*

¶4     *Issue Two:  Whether the District Court properly denied Hicks's motion in limine to exclude from evidence a portion of the police's videotaped interrogation of Hicks.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶5     Three-year-old K.B. died on March 1, 2010, from severe brain injuries that she suffered after Hicks shoved her into a wall on February 26, 2010.  Hicks had been dating K.B.'s mother, Jessica Bray (Bray), during the months preceding K.B.'s death.  Hicks, Bray, and Bray's two children were living together at the time of the incident.

¶6     On the afternoon of February 26th, Hicks was taking care of K.B. by himself while Bray was at work.  Hicks called Bray shortly after 1:20 in the afternoon to inform her that something was wrong with K.B.  Hicks told Bray that their puppy had knocked K.B. down the stairs, and K.B. was not responding.  Bray told Hicks to hang up the phone immediately and to call 9-1-1, which he did.  Hicks told the dispatcher that K.B. had fallen down the stairs and that she was not responsive.  Emergency responders arrived at the house minutes later. They instantly recognized severe injuries when they saw K.B. and immediately transported

2

her to the hospital.

¶7     At the hospital, a CT scan revealed that K.B. had a serious brain injury. The doctors diagnosed K.B. with a subdural hematoma and severe cerebral edema. Although she was taken into surgery at once, the procedure was not successful.

¶8     Because K.B.'s injuries were not consistent with injuries that a child would normally suffer after falling down carpeted stairs, the police took Hicks in for further questioning. Hicks waived his *Miranda* rights and agreed to talk to detectives. Hicks initially was adamant that the dog had knocked K.B. down the stairs. He said that he had been doing homework when he heard what sounded like a bowling ball fall down the stairs. He said that he had rushed over to the base of the stairs where he saw the puppy standing over K.B, so he threw the puppy to get it away from her. Hicks claimed that the puppy hit and dented the drywall.

¶9     As the interview progressed, Hicks acknowledged that the puppy did not dent the wall. He told the detectives that K.B.'s head actually made the dent when he lost his temper and shoved her into the wall. Hicks claimed that K.B. was crying after he had assaulted her but otherwise seemed to be okay. According to Hicks, he asked K.B. if she was hurt and then told her to go upstairs to get her coat so that they could go to the store. Hicks told the detectives that he went to finish his homework and that was when he heard K.B. fall down the stairs.

¶10     One of the detectives retrieved a child-sized mannequin. The detective acknowledged that the mannequin was not the same size as K.B. but asked Hicks to demonstrate how hard he had pushed K.B. Hicks complied. He took the mannequin and threw it into the wall. The

3

detectives asked Hicks if the amount of force that he had used in the demonstration was the same amount of force that he had used when he shoved K.B. Hicks confirmed that it was.

¶11 The doctors declared K.B. brain dead on March 1, 2010. Prosecutors charged Hicks with deliberate homicide on March 11, 2010. He was also charged with solicitation to tamper with physical evidence for asking his mother to retrieve items from the house that he knew could be incriminating.

¶12 Prior to trial, Hicks filed a motion in limine to exclude from evidence the portion of the videotaped interrogation in which Hicks demonstrated how hard he had pushed K.B. Hicks argued that the demonstration was inaccurate and more prejudicial than probative. The District Court initially reserved judgment but later denied Hicks's motion during trial. The entire video of the interrogation was admitted into evidence and shown to the jury. Prior to the opening statements but after the jury was empanelled and sworn-in, Hicks moved to dismiss the deliberate homicide charge. He argued that assault on a minor was not a forcible felony under the deliberate homicide statute. The District Court denied Hicks's motion.

¶13 On November 22, 2010, after a six-day trial, the jury convicted Hicks of both deliberate homicide and solicitation to tamper with physical evidence. The District Court sentenced Hicks to one-hundred years in the Montana State Prison with a twenty-five year parole restriction for deliberate homicide. For solicitation to tamper with physical evidence, Hicks received a concurrent five year prison sentence.[1]

## STANDARD OF REVIEW

---

[1] The solicitation conviction was not raised in the appellate briefs and therefore is not addressed in this opinion.

4

¶14    We review de novo a district court's interpretation of a statute. *State v. Cooksey*, 2012 MT 226, ¶ 32, 366 Mont. 346, 286 P.3d 1174; *State v. Daniels*, 2011 MT 278, ¶ 11, 362 Mont. 426, 265 P.3d 623.   A district court's denial of a motion in limine is an evidentiary ruling. *State v. Meredith*, 2010 MT 27, ¶ 42, 355 Mont. 148, 226 P.3d 571. We review evidentiary rulings for an abuse of discretion. *Meredith*, ¶ 42.  A trial court abuses its discretion when it "acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811.

## DISCUSSION

¶15    *Issue One:  Whether the District Court properly concluded that assault on a minor is a forcible felony under the deliberate homicide statute.*

¶16    Hicks was charged with deliberate homicide, felony-murder, pursuant to § 45-5-102(1)(b), MCA.  A person commits felony-murder when the person attempts to commit, commits, or is legally accountable for the attempt or commission of a forcible felony and in the course of the forcible felony or flight thereafter, the person or any person legally accountable for the crime causes the death of another human being.  Section 45-5-102(1)(b), MCA; *State v. Billedeaux*, 2001 MT 9, ¶ 10, 304 Mont. 89, 18 P.3d 990; *State v. Kills on Top*, 241 Mont. 378, 386-87, 787 P.2d 336, 341 (1990).  Although § 45-5-102(1)(b), MCA, specifically lists a number of felonies that can serve as a predicate offense, the statute provides that any forcible felony can support a charge of felony-murder.

¶17    Prosecutors alleged assault on a minor as the predicate offense for Hicks's felony-murder charge.  Hicks argues that assault on a minor is not a forcible felony because the

5

underlying offense of assault on a minor is misdemeanor assault. Assault on a minor incorporates the elements of misdemeanor assault but also requires that the offender be 18 years of age or older and that the victim be younger than 14 years old. Section 45-5-212, MCA. Because misdemeanor assault and assault on a minor proscribe the same conduct and require the same mental state, and because misdemeanor assault cannot support a charge of felony-murder, Hicks contends that assault on a minor also cannot support a charge of felony-murder.

¶18 Hicks further argues that the legislative history of § 45-5-102(1)(b), MCA, demonstrates that the legislature did not intend assault on a minor to be a felony-murder predicate offense. He argues that if the legislature had intended assault on a minor to be a predicate offense, then the legislature would have included it as one of the specifically listed forcible felonies.

¶19 We seek to implement the legislature's intent when we interpret a statute. *In re K.M.G.*, 2010 MT 81, ¶ 26, 356 Mont. 91, 229 P.3d 1227. We look first to the plain language of the statute to determine legislative intent. *In re K.M.G.*, ¶ 26; *Cooksey*, ¶ 32. When the plain language of the statute is clear, no other means of interpretation are necessary or proper. *Cooksey*, ¶ 32; *City of Missoula v. Cox*, 2008 MT 364, ¶ 9, 346 Mont. 422, 196 P.3d 452; *State v. Roberts*, 2010 MT 110, ¶ 10, 356 Mont. 290, 233 P.3d 324. We do not insert that which the legislature omitted, nor do we omit that which the legislature has inserted. Section 1-2-101, MCA; *In re K.M.G.*, ¶ 26; *Cooksey*, ¶ 32. Only when the language of the statute is ambiguous do we resort to the statute's legislative history. *State v. Merry*, 2008 MT 288, ¶ 17, 345 Mont. 390, 191 P.3d 428; *In re K.M.G.*, ¶ 26.

6

¶20     Section 45-5-102(1)(b), MCA, is clear that any forcible felony can support a charge of felony-murder. The statutes that define a forcible felony are unambiguous and require no interpretation beyond their plain language. A forcible felony is any felony that "involves the use or threat of physical force or violence against any individual." Section 45-2-101(24), MCA. A felony is any offense that carries a potential sentence of death or imprisonment in a state prison for a term exceeding one year. Section 45-2-101(23), MCA.

¶21     Assault on a minor is punishable by imprisonment in a state prison for up to five years. Section 45-5-212, MCA. Misdemeanor assault is punishable by imprisonment in a county jail for up to six months. Section 45-5-201, MCA. By codifying assault on a minor as an offense distinct from misdemeanor assault with significantly enhanced penalties, the legislature emphasized the increased severity of the offense when an adult assaults a child. Because assault on a minor is punishable by five years of imprisonment in a state prison, it is a felony.

¶22     As alleged by the State, Hicks's assault on K.B. involved the use of physical force or violence against another person. The District Court correctly determined that assault on a minor, as alleged by the State, is a forcible felony and properly denied Hicks's motion to dismiss.

¶23     *Issue Two: Whether the District Court properly denied Hicks's motion in limine to exclude from evidence a portion of the police's videotaped interrogation of Hicks.*

¶24     Hicks argues that the video of his demonstration of how he had pushed K.B. was substantially more prejudicial than probative. A trial court may exclude relevant evidence if it determines that the evidence's probative value is substantially outweighed by the danger of

7

unfair prejudice. M. R. Evid. 403. Probative evidence in criminal proceedings is usually, if not always, prejudicial to the defendant. *State v. Pittman*, 2005 MT 70, ¶ 27, 326 Mont. 324, 109 P.3d 237. In fact, the prosecutor must present evidence that is prejudicial to the defendant to obtain a conviction. It is only when the evidence is *unfairly* prejudicial that it may be excluded under M. R. Evid. 403. *State v. Bieber*, 2007 MT 262, ¶ 59, 339 Mont. 309, 170 P.3d 444. Evidence may be unfairly prejudicial if it arouses the jury's hostility or sympathy for one side without regard to its probative value, if it confuses or misleads the trier of fact, or if it unduly distracts from the main issues. *State v. Huether*, 284 Mont. 259, 265, 943 P.2d 1291, 1295 (1997) (citing *State v. Thompson*, 263 Mont. 17, 28-29, 865 P.2d 1125, 1132 (1993)). The trial court has discretion to decide whether the danger of unfair prejudice substantially outweighs the evidence's probative value. *Bieber*, ¶ 59.

¶25 Hicks contends that the reenactment should not have been admitted into evidence because he admitted that he had pushed K.B. into the wall, and the video reenactment was therefore not probative of any material fact in question. Hicks further asserts that the reenactment was grossly inaccurate and did not fairly portray the parties or the circumstances. Hicks claims that the reenactment was flawed because the mannequin was much smaller and lighter than K.B., because the interrogation room's walls were cement and not sheetrock like the apartment's walls, and because the detectives failed to confirm with Hicks that the demonstration accurately depicted the parties' respective positions and how he had grabbed K.B.

¶26 Despite Hicks's contention, the video of the reenactment was probative of a material fact in question and clearly was relevant to whether Hicks caused K.B.'s death. At trial,

8

Hicks's counsel admitted that Hicks had committed assault on a minor. He defended against the deliberate homicide charge, however, by arguing that K.B.'s fatal injuries could not have resulted from being shoved into the wall. Hicks's counsel argued during closing that the small dent in the wall would have been much larger if Hicks had shoved K.B. with the force necessary to cause the severe injuries that led to her death. The prosecution argued that K.B.'s death was the direct result of her head being slammed into the wall with severe force. Hicks's reenactment demonstrated how hard he had shoved K.B., which was probative of one of the main facts in question—whether Hicks had caused K.B.'s death.

¶27 Moreover, the District Court did not abuse its discretion when it determined that the probative value of the video was not substantially outweighed by the danger of unfair prejudice. As the District Court noted, the video certainly was powerful and graphic. It was incriminating and prejudicial to Hicks, but not unfairly so. Hicks was not coerced in any way. Hicks selected the amount of force to use. After the demonstration, Hicks confirmed that he had shoved the mannequin with the same amount of force that he had used when he shoved K.B.

¶28 It was not outside the bounds of reason for the District Court to conclude that the jury could account for the demonstration's flaws when considering the video evidence. The flaws in Hicks's demonstration did not create danger of unfair prejudice that substantially outweighs the video's probative value. The danger of unfair prejudice was slight. The jury was capable of understanding that the mannequin was smaller than K.B. and that the walls in the interrogation room were a different material than the wall that K.B.'s head had dented. Hicks was free to point out the flaws of the demonstration at trial and to argue to the jury that

9

it should afford little weight to the video due to those flaws. Hicks's demonstration did not distract from the main issues, confuse or mislead the jury, or arouse the jury's hostility without regard to the video's probative value. The District Court did not abuse its discretion by admitting the entire video into evidence.

¶29    For the reasons stated above, Hicks's convictions are affirmed.

/S/ MIKE McGRATH

We concur:

/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS