JUSTICE RICE,
dissenting.
¶16 The sum total of the Court’s analysis of the legal question before us is to repeat seven times that the “common” meaning of the term prisoner” requires that K. J. was one. This lay approach to the issue may be well suited for coffee Match world-problem-solving conducted at the corner café, but should not trump the application of legal principles governing this case. I believe the District Court properly applied the canons of statutory construction to reach its determination.
¶17 As the District Court noted, the term “prisoner” is not as straightforward as the State contends, as even the dictionary definitions the State has offered tend to incorporate the idea that a prisoner is confined due to conviction, service of a prison sentence, or a pending trial on criminal charges. The Legislature has enacted various code provisions that define or use the term “prisoner” in connection with service of a prison sentence. See §46-31-101, MCA (describing a “prisoner” as one who ‘has entered upon a term of imprisonment in a penal or correctional institution’); §46-1-202(16), MCA (defining parole as ‘the release to the community of a prisoner ... prior to the expiration of the prisoner’s term’). Similarly, the Legislature has commonly distinguished the term "prisoner” by using other terms to reference other detainees. See § 7-32-2208, MCA (distinguishing an ‘inmate committed to a detention center for trial or examination” and “a prisoner convicted” of an offense); §7-32-2144, MCA (a sheriff is entitled to state reimbursement for “delivering prisoners at the state prison or a juvenile correctional facility or mentally ill persons at the Montana state hospital’). Consistent with this general distinction, the Criminal Law Commission Comments to *107 the subject statute, §45-5-204, MCA, indicate that the statute was designed to support a “policy that a sentence to imprisonment should be rehabilitative in nature. Clearly, little rehabilitation or reorientation to social norms can be accomplished when those responsible for the custody and care of prisoners mistreat them.”
¶18 “‘[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.’ ” United States v. Bass, 404 U.S. 336, 347, 92 S. Ct. 515, 522 (1971) (citing Rewis v. United States, 401 U.S. 808, 812, 91 S. Ct. 1056, 1059 (1971)). Our Court has likewise applied this “classic rule of construction of criminal statutes,” sometimes referred to as the rule of lenity. See State v. Goodwin, 249 Mont. 1, 23-24, 813 P.2d 953, 966-67 (1991); but see State v. Turner, 262 Mont. 39, 49, 864 P.2d 235 (1993).
¶19 ‘We seek to implement the legislature’s intent when we interpret a statute.” State v. Hicks, 2013 MT 50, ¶ 19, 369 Mont. 165, 296 P.3d 1149 (citation omitted); § 1-2-102, MCA (‘In the construction of a statute, the intention of the legislature is to be pursued if possible.”). The District Court closely analyzed this uncertain statute and, on the basis of the statutory context and legislative history, determined that the Legislature had not clearly expressed an intention to include detainees beyond those prisoners who are subject to a sentence of imprisonment. “ ‘Statutory construction is a ‘holistic endeavor’ and must account for the statute’s text, language, structure, and object.’ ” State v. Heath, 2004 MT 126, ¶ 24, 321 Mont. 280, 90 P.3d 426 (citation omitted). “When the plain meaning of a statute is subject to more than one reasonable interpretation... we will examine the legislative history to aid our interpretation.” Heath, ¶ 33.
¶20 I agree with the District Court’s analysis and its conclusion that the Legislature did not clearly extend this statute to the acts alleged to have been committed by Madsen. Further, it is not our duty to extend it. “[Ljegislatures and not courts should define criminal activity.” Bass, 404 U.S. at 348, 92 S. Ct. at 523. While there are other statutes under which Madsen could have been charged, I believe dismissal under this statute was warranted.
¶21 I would affirm the District Court.
JUSTICE McKINNON joins in the dissenting Opinion of JUSTICE RICE.