**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHARLES DANIEL SMITH, *Plaintiff-Appellant*, | No. 21-35149 |
| v. | D.C. No. 1:18-cv-00069-SPW-TJC |
| CHARTER COMMUNICATIONS, INC., *Defendant-Appellee.* | ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF MONTANA |

Filed January 18, 2022

Before: Susan P. Graber and Daniel P. Collins, Circuit Judges, and Jennifer Choe-Groves,[*] Judge.

Order

---

[*] The Honorable Jennifer Choe-Groves, Judge for the United States Court of International Trade, sitting by designation.

## SUMMARY[**]

### Montana Law

The panel certified to the Supreme Court of Montana the following question:

> Whether, in an action for wrongful discharge pursuant to Montana Code Annotated section 39-2-904, an employer may defend a termination solely for the reasons given in a discharge letter, as the court held in *Galbreath v. Golden Sunlight Mines, Inc.*, 890 P.2d 382 (Mont. 1995), or whether the 1999 statutory amendments have superseded the *Galbreath* rule.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

Defendant Charter Communications, Inc., fired one of its employees, Plaintiff Charles Daniel Smith, in early 2018. Plaintiff then brought this diversity action under Montana's wrongful-discharge statute, alleging that Defendant lacked "good cause" to fire him.  Mont. Code Ann. § 39-2-904(1)(b).[1]  The district court granted summary judgment to Defendant, and Plaintiff timely appeals.

We conclude that the disposition of this appeal turns on a single question of Montana law:  whether a defendant in a wrongful-discharge action may establish good cause for the dismissal on grounds that were not set forth in the employee's termination letter.  The Montana Supreme Court held in *Galbreath v. Golden Sunlight Mines, Inc.*, 890 P.2d 382 (Mont. 1995), that an employer could not rely on such additional grounds, but some courts have concluded that later statutory amendments superseded *Galbreath*'s rule.  If *Galbreath* remains valid, then we will reverse the district court's summary judgment, which relied on grounds not stated in Plaintiff's discharge letter.  But if *Galbreath* is no longer good law, and additional grounds may be considered, then we will affirm the district court's summary judgment.

The outcome of this appeal turns, then, on the vitality of the *Galbreath* rule.  That central question of state law is determinative of the instant appeal, and we find no controlling precedent in the decisions of the Montana Supreme Court.  Mont. R. App. P. 15(3).  Thus, we

---

[1] Montana amended its employment-related laws, effective in March 2021.  Those amendments do not affect the analysis of this case, but all citations are to the version of the statute that was in effect when Defendant fired Plaintiff in 2018.

respectfully certify this question of law to the Montana Supreme Court pursuant to Rule 15 of the Montana Rules of Appellate Procedure.

"We invoke the certification process only after careful consideration and do not do so lightly." *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019) (en banc) (order) (quoting *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003)). Whether employers may defend a termination solely for the reasons given in a discharge letter in a wrongful-discharge action is a "substantial" question of "broad application," and the issue has "important public policy ramifications." *See id.* (listing factors relevant to invoking the certification process). Because Defendant asks us to recognize, as superseded by statute, a line of decisions by the Montana Supreme Court, "the spirit of comity and federalism" also weighs in favor of certification. *Id.* (quoting *Kremen*, 325 F.3d at 1037–38). We hesitate to declare the relevant state-court decisions to be superseded by statute without first giving the Montana Supreme Court an opportunity to decide the issue. For all of those reasons, we exercise our discretion to certify the question to the Montana Supreme Court.

Pursuant to Montana Rule of Appellate Procedure 15(6), we provide the following information for the consideration of the Montana Supreme Court.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff began working for Defendant in 2013, when Defendant acquired Plaintiff's previous employer. In 2016, Plaintiff became a vice president of "Inside Plant" ("VP, ISP") for the Mountain States management area, which encompassed Montana, Wyoming, and parts of Colorado. Plaintiff had responsibility for managing employees at about

50 sites scattered in the region. Although the parties dispute the full extent of a travel requirement, it is clear that the job required Plaintiff to travel to each of those sites at least quarterly.

In April 2017, Plaintiff's supervisor issued to Plaintiff a "corrective action report," with a written warning selected as the chosen action. Plaintiff eventually resolved the issues without further disciplinary action.

In July 2017, Plaintiff took time off from work for a personal trip. Plaintiff was injured during that trip and spent more than three weeks in a hospital. He took approved medical leave until November 2017, when he returned to work.

During his recovery, in October 2017, Plaintiff posted a comment on Facebook from his personal account. Although Plaintiff maintains that his comment was taken out of context, many persons found the comment offensive, and it drew significant media attention. Plaintiff listed his employer on his Facebook page, and someone created a new post by copying Plaintiff's employment information and placing that information next to Plaintiff's controversial comment. At Defendant's request, Plaintiff deleted his original post.

Plaintiff had been scheduled to return to work on November 6, 2017. But, as a result of the Facebook post, Defendant suspended him without pay and issued him a final warning in lieu of termination. Plaintiff returned to work on November 20, 2017.

On January 29, 2018, Defendant fired Plaintiff. The corrective action report listed two reasons for the termination. First, Plaintiff allowed an employee to work as

an electrician, in violation of the company's policy. Second, "[i]n December 2017," Plaintiff "failed to fulfill the 50% travel requirement to [his] management area."

Plaintiff filed this action in state court, and Defendant removed it to federal court. Plaintiff alleges a single claim that Defendant fired him without good cause, in violation of Montana Code Annotated section 39-2-904(1)(b).[2]

After discovery, Defendant moved for summary judgment. A magistrate judge issued a recommendation, and a district judge independently reviewed the motion. With respect to the first reason, the magistrate judge ruled that genuine issues of material fact exist as to whether Plaintiff allowed unauthorized electrical work, the district judge did not disturb that conclusion, and neither party challenges it on appeal.

The magistrate judge also recommended denying summary judgment as to the second reason, but the district judge disagreed. The district judge did not disagree with the magistrate judge's conclusion that there was a genuine issue of material fact as to whether a 50% travel requirement existed in 2017. But the district judge concluded that this dispute was "immaterial" because the undisputed evidence established that Plaintiff had "failed to meet even [the] quarterly travel requirement" that Plaintiff conceded was applicable. Although Plaintiff's failure to comply with the quarterly travel requirement was not expressly mentioned in Plaintiff's termination letter, the district judge concluded

---

[2] Plaintiff initially brought a second claim, that Defendant violated its own written policies. But Plaintiff abandoned that claim, the district court granted summary judgment to Defendant on it, and Plaintiff does not raise that issue on appeal. Only the wrongful-discharge claim described in text remains.

that it nonetheless "substantiated" the reasons given in that letter. On that basis, the district judge held that the quarterly travel requirement could be considered, notwithstanding *Galbreath*, which the district judge stated was still good law.

Plaintiff timely appeals. We review de novo the district court's grant of summary judgment. *Wolfe v. BNSF Ry. Co.*, 749 F.3d 859, 863 (9th Cir. 2014).

## DISCUSSION

In determining Montana law, we are bound by the decisions of the Montana Supreme Court. *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011). If the Montana Supreme Court has not decided an issue, we must predict how the court would resolve it. *Id.* Under Montana law, as relevant here, a "discharge is wrongful" if "the discharge was not for good cause." Mont. Code Ann. § 39-2-904(1)(b).

If we may consider Plaintiff's failure to comply with the quarterly travel requirement, then Defendant had good cause to terminate Plaintiff. Although the parties dispute the full extent of Plaintiff's travel requirements, the parties agree that he was required to visit all his sites on at least a quarterly basis, and his travel schedule fell far short of that requirement. Plaintiff "traveled" to the Billings site, located across the parking lot from Plaintiff's office, throughout 2017. But he traveled elsewhere only sporadically, visiting only a few of the sites he oversaw during 2017. The record decisively establishes that Plaintiff failed to meet the specific travel requirement that he visit the sites quarterly. Defendant therefore had good cause for the termination. *See* Mont. Code Ann. § 39-2-903(5) ("'Good cause' means reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the

employer's operation, or other legitimate business reason."); *Putnam v. Cent. Mont. Med. Ctr.*, 460 P.3d 419, 423 (Mont. 2020) ("A legitimate business reason is one that is not false, whimsical, arbitrary, or capricious, and one that must have some logical relationship to the needs of the business." (internal quotation marks omitted)); *id.* (holding that courts generally defer to an employer's business judgment especially where, as here, the employee holds a sensitive managerial position).[3]

A.  *Application of the* Galbreath *Rule*

As noted, the Montana Supreme Court held, in *Galbreath*, 890 P.2d at 384–85, that an employer may defend its termination decision *only* for the reasons stated in a discharge letter.  Defendant's discharge letter did not list, as a reason for the termination, a failure to make quarterly site visits.  Instead, Defendant stated that Plaintiff failed to meet a very specific requirement:  that he travel 50% of the time in December 2017.

Genuine issues of material fact exist as to whether Defendant had imposed a 50% travel requirement on Plaintiff during 2017.  For example, Defendant's written policy for 2017 contains no 50% travel requirement; by contrast, Defendant's written policy for 2018 *does* contain a 50% travel requirement.  Defendant asserts that Plaintiff was told, at some point during 2017, that he was subject to a 50% travel requirement.  But Plaintiff denies ever receiving that message, and we conclude that Defendant's evidence that

---

[3] For the reasons stated by the district court, we reject Plaintiff's alternative argument that he presented sufficient evidence of pretext to rebut Defendant's showing of good cause. *See Putnam*, 460 P.3d at 424 (holding that, once an employer sets forth evidence of good cause, an employee bears the burden of presenting evidence of pretext).

Plaintiff was told of the new requirement does not mandate summary judgment. A reasonable juror could believe Plaintiff and disbelieve the contrary evidence.

Contrary to the district court's conclusion, evidence of Plaintiff's failure to meet the quarterly travel requirement does not substantiate the very specific reason given in the letter. Employers may introduce any evidence that "substantiates" a reason given in a discharge letter. *See McConkey v. Flathead Elec. Coop.*, 125 P.3d 1121, 1127 (Mont. 2005) (evidence of the company's finances admissible where the letter stated that the fired employee's recommendations "negatively impacted [the employer] financially"); *Jarvenpaa v. Glacier Elec. Coop., Inc.*, 970 P.2d 84, 90–91 (Mont. 1998) (evidence of morale admissible where the letter cited low morale as a reason for discharge); *McGillen v. Plum Creek Timber Co.*, 964 P.2d 18, 24–25 (Mont. 1998) (evidence of motive as to the employee's bad act admissible where the letter cited the bad act as the reason for discharge). But an employer may not introduce evidence unrelated to the reasons given in a discharge letter. *Galbreath*, 890 P.2d at 384–85 (evidence of staging of a workplace accident inadmissible where the letter cited only a failure to provide medical documentation); *Bean v. Mont. Bd. of Labor Appeals*, 965 P.2d 256, 261 (Mont. 1998) (evidence of unrelated misconduct inadmissible where the letter cited only unprofessional conduct during a specific incident).

The factual issue at dispute here is whether Defendant required Plaintiff to travel 50% of the time in December 2017. Evidence of Plaintiff's failure to visit all the sites quarterly does not speak to that critical disputed issue, because it does not relate to whether Defendant had imposed a 50% travel requirement on him. If Plaintiff was not

required to travel 50% of the time, then the discharge letter does not show good cause:  he was unfairly faulted for failing to do something that he was not required to do.  His failure to visit the sites at least quarterly thus does not "substantiate" the reason given in the discharge letter.  In our view, this case is comparable to *Bean*, 965 P.2d at 261, where the discharge letter listed one specific incident of misconduct, and the court held that evidence of *other* instances of misconduct was inadmissible.  The cases cited by Defendant are not to the contrary because, in those cases, the evidence had a clear connection to a reason listed in the discharge letter.  *See, e.g.*, *Jarvenpaa*, 970 P.2d at 90–91 (evidence of morale and operational performance admissible where the discharge letter stated that the employee had detrimentally affected morale and operations).  The district court thus erred in granting summary judgment on the ground that Plaintiff's travel schedule substantiated the reason in the letter.

In sum, if the sole question is whether Defendant had "good cause," then the district court properly granted summary judgment to Defendant.  But if the *Galbreath* rule remains good law, then genuine issues of material fact remain and, accordingly, the district court erred by granting summary judgment to Defendant.

## B.  *The 1999 Statutory Amendments and the* Galbreath *Rule*

We turn, then, to the key legal question in this case: whether the *Galbreath* rule remains good law following 1999 statutory amendments.  Because of the importance of the issue, we describe the jurisprudential and statutory history in some detail.

Before the 1999 amendments, Montana Code Annotated section 39-2-801 required an employer, upon an employee's

request, "to furnish him in writing a full, succinct, and complete statement of the reason of his discharge." In *Swanson v. St. John's Lutheran Hospital*, 597 P.2d 702, 706–07 (Mont. 1979), the Montana Supreme Court interpreted that passage as binding the employer, in a later wrongful-discharge action, to justify the firing *only* for those reasons stated in the letter that the employee had requested. The statutory provision, the court held, "becomes a part of any employment contract entered into by an employer and an employee in the State of Montana." *Id.* at 706. "[I]t is our duty to interpret [the statute's] requiring a 'full, succinct and complete' statement to mean exactly what it says. Therefore, in the case at bar, the only reason which could be considered by the District Court was the reason set forth in the [discharge] letter." *Id.* at 706–07. *Swanson* expressly concerned a letter requested by the employee. *Id.* at 706.

Sixteen years later, the Montana Supreme Court decided *Galbreath*. The court held that the trial court had erred by admitting evidence of reasons other than the reason contained in the discharge letter. 890 P.2d at 384–85. The court reasoned as follows:

> In *Swanson*, we concluded that in a wrongful discharge action the only reason for discharge the district court could consider was the reason set forth in the discharge letter. Reasons other than the reason stated in the discharge letter were irrelevant and excluded from evidence. *Swanson*, 597 P.2d at 704. By allowing the above testimony in the present case to go to the jury, the court, in effect, permitted the jury to decide whether the discharge was wrongful based on reasons other than, or in addition to, the sole reason

> stated in the discharge letter. Any collateral reasons suggested by the evidence, other than the sole reason stated in the discharge letter, were irrelevant, and therefore, inadmissible. Rule 402, M.R.Evid.; *Swanson*, 597 P.2d at 704.

> We hold that the District Court erred in allowing [the employer] to offer evidence suggesting that [the employee] was discharged for reasons other than the reason set forth in his discharge letter.

*Id.* at 385 (one citation omitted). Two justices dissented on the ground that *Swanson* was distinguishable because, unlike the case at hand, the plaintiff in *Swanson* had requested a statement of reasons pursuant to section 39-2-801. *Id.* at 385–86 (Weber, J., dissenting). The majority did not respond expressly to the dissent's view.

Three years later, in 1998, the Montana Supreme Court applied the *Galbreath* rule in three separate cases. *Jarvenpaa*, 970 P.2d at 90–91; *Bean*, 965 P.2d at 261; *McGillen*, 964 P.2d at 24–25.

The next year, in 1999, the Montana legislature amended section 39-2-801. The statute no longer requires "a *full*, succinct, *and complete* statement of the reason" for discharge (emphases added); it now requires only "a statement of reasons." Mont. Code Ann. § 39-2-801(1). Moreover, the statute now provides: "A response to the demand may be modified at any time and may not limit a person's ability to present a full defense in any action brought by the discharged employee." *Id.* § 39-2-801(3). The earlier version of the statute contained no similar provision.

The amended statute means that, at least for purposes of section 39-2-801, for those employees who receive a letter pursuant to that section, the employer is not bound in litigation by the reasons given in the letter.  Defendant argues, further, that the amendments to the statute undermine the foundation for *Galbreath*'s rule.  *Galbreath* relied on *Swanson*, and *Swanson* relied on section 39-2-801. Defendant contends that, because section 39-2-801 has been amended to require the opposite result, *Swanson* is no longer good law, and so too is *Galbreath* no longer good law.

Since the 1999 amendments, the Montana Supreme Court has discussed the *Galbreath* rule only once, in *McConkey*, 125 P.3d at 1127, in 2005.  No party appears to have argued that the rule had been superseded by statute. The court held that the rule did *not* apply in that case, because the evidence substantiated the reason in the discharge letter.  So *McConkey* sheds little light on the effect of the 1999 amendments.

At least two Montana trial courts have held that the 1999 amendments superseded the *Galbreath* rule.  In *Bourdelais v. Semitool, Inc.*, No. DV 01-073(B), 2002 Mont. Dist. LEXIS 2244, at *31–32 (Dist. Ct. Mont. Sept. 13, 2002), *aff'd*, 77 P.3d 555 (Mont. 2003) (unpublished), the court stated, without elaboration:

> [T]he 1999 legislature amended section 39-2-801 to state that an employer is not limited to the reasons set forth in response to the employee's request for a written statement of the reasons for discharge, and may modify its response at any time.  *Galbreath* no longer applies.

(citation format altered).  Another trial court held the same in 2007, after *McConkey* had been decided:  "*Swanson* and *Galbreath* . . . were decided on the service letter rule (and thus have now been superseded by statute)."  *Stevenson v. Felco Indus., Inc.*, No. DV-06-298, 2007 WL 5528566, at *3 (Dist. Ct. Mont. Apr. 16, 2007).  The court agreed with a then-recent law review article on the topic.  *Id.* (citing William L. Corbett, *Resolving Employee Discharge Disputes Under the Montana Wrongful Discharge Act (MWDA), Discharge Claims Arising Apart from the MWDA, and Practice and Procedure Issues in the Context of a Discharge Case*, 66 Mont. L. Rev. 329, 392–93 (2005)).  We have found other Montana trial court decisions that have applied the *Galbreath* rule without comment.[4]  But we have not found any other Montana trial court decision that confronted the question concerning the statutory amendment.  In sum, both Montana trial courts to have considered the issue have held that the statutory amendments superseded the *Galbreath* rule.

Decisions by the federal district court in Montana have split.  One decision held, as the two state trial courts had held, that the statutory amendments superseded the *Galbreath* rule.  *Erdman v. Wal-Mart Stores, Inc.*, No. CV-05-202-M-DWM, 2007 WL 9710331, at *2 (D. Mont. Sept. 13, 2007) (order) (unpublished).  "The cases cited by [the employee] . . . rely on language in a prior version of Montana Code Annotated [section] 39-2-801 that required

---

[4] *Wells v. River Design Grp.*, No. DV-15-2019-526-WS (D), 2020 WL 8837385, at *3–5 (Dist. Ct. Mont. Dec. 9, 2020) (unpublished); *Reinlasoder v. City of Colstrip*, No. DV 14-0340, 2015 WL 4384625 (Dist. Ct. Mont. Feb. 15, 2015) (unpublished); *Swehla v. Montana*, No. ADV-2009-926, 2012 WL 9510453 (Dist. Ct. Mont. Sept. 21, 2012) (unpublished); *Winslow v. Mont. Rail Link, Inc.*, No. CDV-1997-552, 2003 WL 25656786 (Dist. Ct. Mont. May 14, 2003) (unpublished).

employers to provide a 'full, succinct, and complete statement' of the reason for discharge." *Id.* "Because of the[] statutory amendments, reasons for [the employee's] discharge other than those set forth in the exit interview form are relevant and admissible . . . ." *Id.* By contrast, one recent federal district court decision has rejected that reasoning and result. *McCue v. Integra Imaging, P.S.*, No. CV 19-147-M-DLC, 2021 WL 633416, at \*4 (D. Mont. Feb. 18, 2021) (order).**[5]**

The legislative history, which mentions the Montana Supreme Court's decisions, including *Galbreath*, may contain useful guidance. *See Clarke v. Massey*, 897 P.2d 1085, 1088 (Mont. 1995) (discussing the role of legislative history in statutory interpretation); *see, e.g.*, *Hearing on S.B. 271 Before the S. Comm. on Lab. & Emp. Rels.*, 56 Leg., Reg. Sess., Ex. 2 (Mont. 1999) (Letter from Law Offices of Moulton, Bellingham, Longo & Mather, P.C.) (listing three decisions by the Montana Supreme Court, including *Galbreath*); *Letter from Gov. Racicot to the Legislature*

---

**[5]** As is true with the state trial-court decisions, some federal district court decisions have applied *Galbreath* without comment. *King v. Recreational Equip., Inc.*, No. CV 16-27-M-DLC, 2016 WL 8711290, at \*2 (D. Mont. Dec. 8, 2016) (unpublished); *Weinheimer v. Omniflight Helicopters, Inc.*, No. CV 09-06-M-DWM, 2010 WL 11606784, at \*5 (D. Mont. Apr. 19, 2010) (unpublished); *Schwartz v. Metro Aviation, Inc.*, No. CV 08-32-M-JCL, 2009 WL 352599, at \*5 (D. Mont. Feb. 9, 2009) (unpublished); *Bleek v. Supervalu, Inc.*, 95 F. Supp. 2d 1118, 1124–25 (D. Mont. 2000). Because no party appears to have raised the question concerning the 1999 amendments, those cases bear little weight.

*Regarding Proposed Amendments* (Apr. 16, 1999) (referring to "recent court cases").[6]

CERTIFICATION

In light of the foregoing discussion, we certify the following question to the Montana Supreme Court:

> Whether, in an action for wrongful discharge pursuant to Montana Code Annotated section 39-2-904, an employer may defend a termination solely for the reasons given in a discharge letter, as the court held in *Galbreath v. Golden Sunlight Mines, Inc.*, 890 P.2d 382 (Mont. 1995), or whether the 1999 statutory amendments have superseded the *Galbreath* rule.

We acknowledge that, as the receiving court, the Montana Supreme Court may reformulate the certified question. Mont. R. App. P. 15(6)(a)(iii).

The names and addresses of counsel for the parties, as required by Montana Rule of Appellate Procedure 15(6)(a)(iv), are as follows:

> Eric Holm; Holm Law Firm, PLLC; 12 North 35th Street, Billings, MT 59101 for Appellant Charles Daniel Smith

> Joshua Becker Kirkpatrick, David C. Gartenberg; Littler Mendelson, PC; 1900

---

[6] The State Law Library of Montana provides a Compiled Legislative History of Montana State Senate Bill 271, which includes the summary minutes of committee hearings and meetings.

16th Street, Suite 800, Denver, CO 80202 for
Appellee Charter Communications, Inc.

The Clerk shall forward a certified copy of this
certification order, under official seal, to the Montana
Supreme Court.  The Clerk is also ordered to transmit a copy
of the Excerpts of Record filed in this appeal to the Montana
Supreme Court and, if requested by the Montana Supreme
Court, provide all or part of the district court record not
included in the Excerpts of Record.  Mont. R. App. P. 15(5).
The Clerk is further directed to forward a copy of the briefs
filed by the parties.

Submission of this appeal for decision is vacated and
deferred pending the Montana Supreme Court's final
response to this certification order.  The Clerk is directed to
close this docket administratively, pending further order.
The parties shall notify the Clerk of this court within
fourteen days of the Montana Supreme Court's acceptance
or rejection of certification, and again, if certification is
accepted, within fourteen days of the Montana Supreme
Court's issuance of a decision.

**QUESTION       CERTIFIED;       PROCEEDINGS
STAYED.**